# Richmond

BROOKS TRANSPORTATION COMPANY, INC., ET AL. V.
THE CITY OF LYNCHBURG, VA.

April 22, 1946.

Record No. 2997.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and
Spratley, JJ.

136

The opinion states the case.

*S. W. Shelton*, for the plaintiffs in error.

*Robert D. Morrison*, for the defendant in error.

BROWNING, J., delivered the opinion of the court.

This suit for a declaratory judgment on the question of the validity and enforceability of the mileage charge imposed by the City of Lynchburg under Section 70 of the Lynchburg Tax Code, and the validity and applicability of Section 11, Chapter 360, Acts 1932, Virginia Code 1942 (Michie), Section 4097y24, was instituted in the Corporation Court for the City of Lynchburg by Brooks Transportation Company, Incorporated, a Virginia corporation, the Mason and Dixon Lines, Incorporated, a Tennessee corporation, W. W. Raper, trading as American Trucking Company, with domicile in North Carolina, Richmond-Harrisonburg Freight Line, Incorporated, a Virginia corporation, and American Trucking Associations, Incorporated, a corporation of the District of Columbia, petitioners, against the City of Lynchburg and Abram P. Staples, Attorney General of the Commonwealth of Virginia, defendants. On motion of the City, American Trucking Associations, Incorporated, was dismissed as party plaintiff; and upon his own motion, the Attorney General was dismissed as a party defendant in the action.

The judgment of the Court upheld the validity and enforceability of the City's mileage tax as to the two corporations domiciled in this State, namely, Brooks Transportation Company, Incorporated, and Richmond-Harrisonburg Freight Line, Incorporated; but held as to The Mason and Dixon Lines, Incorporated, domiciled in Tennessee, that a reciprocal contract dated September 4, 1943, between the Governor of Virginia and the State of Tennessee, released this petitioner from complying with the provisions of the tax ordinance, and that W. W. Raper, trading as American Trucking Company, domiciled in North Carolina, was similarly relieved by virtue of a contract between the Governor

of Virginia and the State of North Carolina, dated November 30, 1943.

The City brings cross error challenging the validity of the act of the Governor of Virginia in releasing motor vehicle owners and operators domiciled in such other states from the mileage charge imposed by it for the use of its streets.

Thus the question presented in this case is not only the right of a municipality of the Commonwealth of Virginia, pursuant to Section 11, Chapter 360, Acts 1932, Virginia Code 1942 (Michie), Section 4097y24, to impose an annual mileage charge on common carriers by motor vehicle for the privilege of using its streets, but also the right and authority of the Governor of Virginia to make what is called a reciprocal tax contract with other states by which common carriers domiciled in such states are relieved from the payment of the annual mileage charge levied by the municipalities of Virginia and the same relief, as to like carriers, domiciled in Virginia from the imposition of a like tax or mileage charge levied by the municipalities of such other states.

The hearing court adjudged the City's mileage tax as to the two Virginia carriers, viz., Brooks Transportation Company, Incorporated, and Richmond-Harrisonburg Freight Lines, Incorporated, to be valid and enforceable but held that the reciprocal contracts referred to, which were entered into as stated, relieved the Tennessee and North Carolina carriers, viz., Mason and Dixon Lines, Incorporated, and W. W. Raper, trading as American Trucking Company, from complying with the provisions of the tax ordinance.

Section 11, Chapter 360, Acts 1932, Virginia Code 1942 (Michie), Section 4097y24, is as follows:

"Section 11. Charges of cities and towns.—Nothing in this act shall be construed to preclude any city or town through which any motor vehicle carrier operates from imposing a reasonable charge on such motor vehicle carrier for the use of the streets, roads or routes, including bridges, other than toll bridges, maintained by such cities or towns; provided, however, that such charge for motor vehicle carriers shall not exceed one-fifth cent per mile for each mile operated

within such city or town by any vehicle weighing five thousand pounds or less, two-fifths cent per mile for each mile so operated by any vehicle weighing more than five thousand pounds and less than fifteen thousand pounds; and three-fifths cent per mile for each mile so operated by any vehicle weighing more than fifteen thousand pounds."

Section 70 of the Lynchburg Tax Code is as follows:

"The annual charge imposed upon any motor vehicle carrier for the privilege of using the streets, roads, routes and bridges of the city shall be as hereinafter set forth, and said charge shall be in addition to any and all other licenses and taxes levied under the laws of the State or the ordinances of the city on said motor vehicle carrier. Such charge shall be for each mile operated over the public streets, roads or routes, including bridges, of the city, during the year for which said license is issued, and shall be as follows:

"(a)  On any vehicle weighing 5,000 pounds or less, one-fifth cent per mile;

"(b)  On any vehicle weighing over 5,000 pounds and less than 15,000 pounds, two-fifths cent per mile;

"(c)  On any vehicle weighing more than 15,000 pounds, three-fifths cent per mile.

"The charges described under this section shall be estimated as hereinafter prescribed, and such estimated charges (subject, however, to adjustment in the following year) shall be paid annually in advance at the time of registration. After the initial registration, registration shall be renewed annually on or before the first day of April.

"At the time of registration, a motor vehicle carrier which has not used the streets of the city during the preceding calendar year shall pay charges for the current year upon the basis of a certified estimate of the use of the streets to be made during such year; provided, however, a proper adjustment of charges on the basis of actual operations during such year shall be made at the time of the next succeeding registration in the year following, at which time such motor vehicle carrier shall pay to the city any underpayment, or the city shall refund or credit on the then current

annual charge of such motor vehicle carrier any overpayment occasioned by any difference between the estimated and the actual operations of such motor vehicle carrier.

"At the time of registration, a motor vehicle carrier which has used the streets of the city during the preceding calendar year may either pay charges for the current year on a basis of such certified estimate described in the paragraph immediately preceding, or may pay charges for such current year on the basis of its operations within the city during the preceding calendar year; provided, however, that in either event a proper adjustment of charges, as set forth in the paragraph immediately preceding, shall be made at the time of the next succeeding registration in the year following."

There is no question as to the jurisdiction of the courts to entertain the character of adjudication here sought, where an actual controversy exists.

Code of Virginia (Michie), Section 6140a.

"Section 6140b. Procedure.—Declaratory judgments, orders and decrees may be obtained as other judgments, orders and decrees, and may be reviewed on writ of error or appeal."

Section 3550 of the Lynchburg City Code contains a definition of the phrase "motor vehicle carrier" which is accepted here as a proper one and it is this:

"(a) Motor vehicle carrier—Every person, firm, corporation, association, their lessees, trustees or receivers, owning, controlling, operating or managing any common carrier by motor vehicle or restricted common carrier by motor vehicle and operating as such common carrier or restricted common carrier by virtue of authority from the Interstate Commerce Commission or the State Corporation Commission, or both, and using the streets of the city in the business of transporting persons or property for compensation by motor vehicle."

The contest involves these collateral questions to which we shall have to address ourselves:

(1) The constitutionality of Section 70 of the Lynchburg Tax Code imposing the mileage charge, and of Section 11, Chapter 360, Acts 1932, authorizing imposition of said tax, both with respect to the Constitution of the United

States and the Virginia Constitution. More specifically, it must be determined whether or not the Act and ordinance are (a) in contravention of the equal protection clause of the Fourteenth Amendment to the United States Constitution, (b) whether or not the mileage charge resulting therefrom imposes an unreasonable burden upon interstate commerce, and (c) with respect to the Constitution of Virginia, whether or not the Act and ordinance are special laws prohibited by Section 63 thereof;

(2) Whether or not the State selected routes in the City of Lynchburg are maintained by the City; and

(3) Whether or not the contracts entered into by the Governor of Virginia with the States of Tennessee and North Carolina have the effect of relieving common carriers domiciled therein from paying the mileage charge imposed by the City under Section 70 of its Tax Code.

Complaint is made by the plaintiffs in error that the State Act and the City Ordinance discriminate against them in favor of other carriers, as contract carriers and private carriers; that they are singled out and made subject to the mileage tax; that the classification by which this is done is unreasonable, arbitrary and capricious and does not rest upon any ground of difference having a fair and substantial relation to the object of the legislation; that the equal protection of the law, secured by the Fourteenth Amendment to the Constitution of the United States, is defeated.

The contention is at variance with the facts and with the decisions of the U. S. Supreme Court and of this court. Common carriers usually operate between fixed termini and enjoy the benefits which that fact bestows. Their use of the highways is regular and frequent and, therefore, is particularly destructive to them. Their operation exposes the public to danger far exceeding that consequent upon the occasional movements of other carriers.

*Bekins Van Lines* v. *Riley*, 280 U. S. 80, 50 S. Ct. 64, 74 L. Ed. 178.

The facts and circumstances incident to the above 'case

were not unlike those obtaining here and it was said in the opinion:

"The power of a state in respect to classification has often been declared by opinions here. We are unable to say that there was no reasonable basis for the one under consideration; the court below reached the proper result; and its decree must be confirmed."

\* \* \* \*

"That a marked distinction exists between common and private carriers by auto vehicles appears from *Frost, etc., Trucking Co.* v. *Railroad Comm.*, 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457, and *Michigan Public Utilities Comm.* v. *Duke*, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105."

\* \* \* \*

"Although relied upon by counsel and said to be almost identical with the case at bar, *Quaker City Cab Co.* v. *Pennsylvania*, 277 U. S. 389, 48 S. Ct. 553, 72 L. Ed. 927, gives no support to claim of undue discrimination. We regard the controversy as not open to serious doubt and further discussion of it seems unnecessary."

The common carriers urge consideration of their claim that they are subjected to different taxation than certain other common carriers, showing, as they say, unreasonable classification and thus offending the equal protection theory. On this phase of the matter there is appended to the case of *Alward* v. *Johnson*, 282 U. S. 509, 51 S. Ct. 273, 75 L. Ed. 496, 75 A. L. R. 9, a note on the Constitutionality of Statutes or Ordinances for Taxation of Common Carriers by Automobile.

Under the sub-heading C "Discrimination between different carriers by automobile," the annotator says this:

"Common carriers by motor vehicles may be separately classified for the purpose of taxation. And the principle is well settled \* \* \* \* that different kinds of public carriers by motor vehicle may be separately classified, or

certain classes of such carriers exempted from a tax imposed upon other classes, so long as the classification is reasonable and applies uniformly to all subjects within the class designated. Thus, the fact that a municipal ordinance imposes license fees of different amounts upon different classes of public service vehicles, such as a $5 fee upon cabs, and $10 upon coaches or sight-seeing cars, does not render the ordinance unconstitutional as a denial of the equal protection of the laws, where the classification is not arbitrary, but made with due regard to the act sought to be regulated, and bears a natural and reasonable relation to the object classified."

In the case of *Charleston-Ripley Bus Co.* v. *Shafer*, 103 W. Va. 337, 137 S. E. 360, the major issue was the right of the respective litigants to use the roads of the state between specific points. That involved the validity of their classification by the state. The court, on that point, said this:

"In granting permits to use the roads of the state, the Legislature has deemed it expedient to classify motor vehicles according to the manner of the use, and exact license fees according to that classification. This right to classify is beyond question."

This court said in the case of *Gruber* v. *Commonwealth*, 140 Va. 312, 125 S. E. 427, this:

"We deem it sufficient to say here that we consider it settled, both in principle and upon authority, that, notwithstanding the constitutional guaranties aforesaid, no private individual, firm, or corporation has the right to use the public highways in the prosecution of the business of a common carrier for hire without the consent of the State; that such consent may be altogether withheld or granted as a privilege upon such terms and conditions as the State may prescribe in the exercise of its police power; and that in such exercise of the police power there may be limitations and conditions, and thereby discriminations made between those to whom the privilege is granted and denied, provided the discrimina-

tions are based on some reasonable classification which is not purely arbitrary, does not disclose personal favoritism or prejudice, and is fair and just."

It is true the facts in the above case were quite dissimilar to those here but in that case the validity of a state statute was questioned because it was contended that it was in conflict with the state and federal constitutional guaranties to every citizen of his liberty, his privileges and the equal protection of the laws.

█ As we have seen, there are substantial differences between common carriers and private carriers, which include contract carriers, which justify different classifications. The same is true as to different types of common carriers as, for example, those which are put to different uses and serve different purposes. The legislative recognition of this cannot be the basis of a convincing charge that it is unreasonable, arbitrary and capricious.

In *Virginia Elec., etc., Co. v. Commonwealth*, 169 Va. 688, 704, 194 S. E. 775, this court said:

██ "The power of taxation is fundamental to the very existence of the government of the States. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations.

"It is not the function of this court, in cases like the present, to consider the propriety or justness of the tax, to seek for the motives, or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the legislature, if there are substantial differences between the occupations separately classified. Such differences need not be great. The past decisions of the court make this abundantly clear."

█ The contention that the mileage charge is an unreasonable burden upon interstate commerce cannot be sustained.

In the case of both intrastate and interstate common car-

riers the charge is based upon mileage and weight of vehicles, which basis certainly bears a reasonable relation to the use of the streets. Common carriers, particularly those engaged in interstate commerce, operate huge trucks with double wheels, upon which are tires of enormous size. They run with great regularity, night and day, and they occupy large road space.

It is said in the City's brief that Brooks, of appellants, operated 6,385 miles upon the streets within the City of Lynchburg in the year 1943, and paid for this use the sum of $38.31. This seems a very negligible sum upon which to base a commendable complaint that it is a burden upon interstate commerce.

In the well reasoned case of *American Air Lines* v. *Battle*, 181 Va. 1, 15, 23 S. E. (2d) 796, this is said:

"It has long been held that a state may impose a charge upon those engaged in interstate commerce as reimbursement for the expense of providing facilities for their use."

In that case we quoted from the opinion in the case of *Hendrick* v. *Maryland*, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385, as follows:

"In view of the many decisions of the court there can be no serious doubt that where a state at its own expense furnishes special facilities for the use of those engaged in commerce, interstate as well as domestic, it may exact compensation therefor. The amount of the charges and the method of collection are primarily for determination by the state itself; and so long as they are reasonable and are fixed according to some uniform, fair and practical standard, they constitute no burden on interstate commerce. (Cases cited.) The action of the state must be treated as correct unless the contrary is made to appear. In the instant case there is no evidence concerning the value of the facilities supplied by the state, the cost of maintaining them, or the fairness of the methods adopted for collecting the charges imposed; and we cannot say from a mere inspection of the statute that its provisions are arbitrary or unreasonable."

It is contended that the statute with which we are con-

cerned and the City ordinance are special laws and so violate Section 63 of the Virginia Constitution.

Much that we have already said with reference to classification is equally applicable to this contention.

█ If such classification is not arbitrary the statute and ordinance are not special laws.

In *Gruber v. Commonwealth, supra,* a quite similar motor vehicle carrier act was held not to offend the constitutional provision forbidding the enactment of special laws.

The classification not being despotic or imperious, but fair and just, having a fair relation to the object of the legislation, so that all persons similarly circumstanced will be treated alike, the enactments attacked stand unimpaired, legally or factually.

It is necessary, we think, to spend little time or space in considering the urge that the city does not maintain the state selected routes within its margins. The contenders appear to find their chief support for the position from the fact that the state contributes $2,500.00 per mile towards the maintenance of such routes. This is of little impression in the face of the fact that the city must maintain these routes to the standard of outside highways and the state grant is conditional upon its faithful performance.

We are in agreement with the city in this statement found in its brief:

█ "It is confidently submitted therefore that all through the statutory law it is clear that maintenance means actual maintenance and that the situation is not changed one whit by the receipt of financial aid. When the State grant comes to the City, it is the City's money. It will not do to go back to a source of funds and say that the source maintains or helps maintain because of the use to which the funds are put."

In our way of life there are very few benign or useful enterprises that do not find ready contributors to their maintenance and existence. They may be the product of individual or organizational vision. It would hardly be

accurate to say that those who aid in such projects are their progenitors or maintainers.

It is stipulated that the city performs the actual maintenance of these streets but it is urged that it does not maintain them within the statutory contemplation.

We do not think the contention is tenable for the reasons submitted.

We come to the last issue with which we are to be concerned. It is before us on cross error submitted by the City and challenges the ruling of the court that the reciprocal contracts made by the Governor of Virginia with the states of Tennessee and North Carolina under the provisions of Chapter 377, Acts 1942, relieve the motor vehicle owners and operators, designated therein, domiciled within those states, from paying the mileage charge imposed by the City of Lynchburg.

It is said that the statutory phrase, "all taxes imposed by the state", which is found in Section 36-c, Chapter 377, Acts 1942, which is the reciprocity section, is clear and unambiguous and must be construed as written.

We are impressed with the eminent soundness of the views expressed by the learned judge of the hearing court.

He said this:

"It is urged on behalf of the defendant city that the provisions of Chapter 377, Acts 1942, conferring authority upon the Governor to enter into reciprocal agreements with other states 'with respect to all taxes imposed by this state', does not authorize any such reciprocal agreement relative to local taxes imposed by the cities or localities of this state, and that the tax question is a local tax imposed by the City of Lynchburg and not the state, and is therefore not affected by the authority so given to the Governor, and any reciprocal agreements made by the Governor under such authority would be void to the extent that they dealt with or relieved against any local tax imposed by the City of Lynchburg."

\* \* \* \*

"A municipal corporation has no element of sovereignty. It has no inherent power to tax. In exercising

the taxing power it is a mere agency for, and political sub-division of, the state. All taxes imposed by a municipality may in a broad sense be regarded as state taxes imposed by the state acting through one of its agencies or arms."

So that in a "broad sense", and surely this should be treated in such sense, the City mileage charge may be viewed as properly coming within the statutory intendment.

Any other view would be a narrow one and antagonistic to the indicated policy of the state. The result of a denial of the rightness of this view would be like bestowing a benefit with one hand and taking it back with the other.

A picayune policy in relation with the other states would call for merited criticism and invite a corresponding attitude toward this state.

We affirm the judgment of the hearing court.

*Affirmed.*