# Richmond

H. E. Savage, Jr., doing business as Savage Truck Line
v. Commonwealth of Virginia, at the relation
of State Corporation Commission.

November 24, 1947.

Record No. 3292.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley and
Buchanan, JJ.

The opinion states the case.

*S. W. Shelton,* for the appellant.

*Abram P. Staples, Attorney General,* and *Walter E. Rogers, Assistant Attorney General,* for the appellee.

SPRATLEY, J., delivered the opinion of the court.

This proceeding arose from a rule issued by the State Corporation Commission against H. E. Savage, Jr., trading as Savage Truck Line, requiring him to show cause why he should not be penalized for his failure to report and pay

gross receipts taxes in accordance with the provisions of chapter 377, Acts of 1942, Virginia Code, 1942 (Michie), section 2154 (83) *et seq.*, by reason of the operation of his motor vehicles over the highways of this State for compensation from January 1, 1942, through December 31, 1945, inclusive. After a formal hearing, a penalty of $25 was imposed upon the appellant. From this judgment his appeal was granted as a matter of right. Virginia Constitution, section 156, (d), Virginia Code, 1942 (Michie), section 4097y(13j).

The General Assembly of Virginia first imposed a gross receipts tax on motor vehicles in 1930, Acts of 1930, chapter 419, section 8, (d). The tax based upon mileage included the mileage "travelled within the corporate limits of cities and towns in addition to that travelled on the highways of the State."

Dealing with the same subject matter in Acts of 1932, chapter 360, section 6, (h), it was provided that in calculating the mileage travelled over the highways of Virginia, there should be excluded the mileage "travelled within the corporate limits of those cities and towns which maintained the streets used therein by such carriers."

In 1942, all of section 6 of chapter 360 of the Acts of 1932 was repealed and superseded by section 36 of chapter 377, Acts of 1942.

The pertinent portion of section 36 of the Act of 1942, here involved, reads as follows:

"Except as hereinafter otherwise provided, every person who operates, or causes to be operated, on any highway in Virginia, any motor vehicle, * * * for the transportation of property for compensation, whether for rent, or for hire, or as a contract carrier, or as a common carrier, * * * shall pay a road tax calculated on the gross receipts derived from such operations during the quarter year ending with the preceding month, according to the following schedule:

"(1) Two per centum (2%) of the gross receipts derived by such person from all intrastate operations; and

"(2) Two per centum (2%) of such proportion of the gross receipts derived by such person from all interstate operations as the total number of miles traveled in interstate operations by the vehicle of such person on the public highways of Virginia bears to the total number of miles traveled in interstate operations by the vehicles of such person both within and without Virginia, exclusive in each case of the miles traveled in Virginia on any street maintained exclusively by any city or town. All taxes so collected shall be credited to the highway maintenance and construction fund."

H. E. Savage, Jr., operates motor vehicles over the highways of this State for compensation, under the trade name of Savage Motor Line. He operates intrastate as a contract carrier of property under permits issued by the State Corporation Commission, and interstate as a common carrier of property under certificates of convenience and necessity issued by the Interstate Commerce Commission.

In connection with his operations, he made reports in compliance with chapter 360, Acts of 1932, and chapter 377, Acts of 1942, for the years 1942-3-4-5, purportedly showing his gross receipts for those years. An audit of his books made in February, 1946, by auditors of the State Corporation Commission disclosed that he had deducted from his gross revenues, during the above mentioned period, the amounts paid by him to other motor carriers for the use of their equipment in handling his business. The audit showed the sum of $2,293.71 unpaid,—which represents a 2% tax upon the sum which the State Corporation Commission found should have been included or added to the amount of gross receipts reported by the appellant for the period in question.

During the period involved, under Federal war-time regulations, motor freight carriers were required by the Office of Defense Transportation to work together, so that all freight would move promptly, and no vehicles would be operated with a load less than a stated minimum. It ap-

pears that freight consigned to Savage moving from the south to the north was within the capacity of his own facilities; but that freight consigned to him moving from north to south was often in excess of his capacity to move it promptly. All freight carriers were required to report at a certain hour to the Federal control agency the approximate tonnage of excess freight on hand at its terminals. This agency required and maintained a record of motor vehicles without assignments of full loads. Excess freight received by Savage was transported south by carriers having vehicles with unused space, the majority of which carriers were Virginia contract carriers, classified by the Interstate Commerce Commission as common carriers in interstate commerce. From the revenue received from the transportation of his excess freight thus moved, Savage paid the other carriers on the basis of facilities furnished in each particular movement, sometimes on a per ton basis and other times on a percentage of the tariff. Under the arrangement with the carriers whose facilities were used by Savage, the owner of the vehicle furnished the driver, paid his wages, and furnished the gas and oil for the operation of the equipment.

In all cases, the contract with the owner of the goods shipped was made with the appellant as the carrier, and the goods were transported under his manifest or bills of lading, and the cost of transportation paid to Savage. This was also true where the freight did not pass through the appellant's terminals, and the goods were picked up by the driver of the truck of another carrier. In such instances, the driver billed the goods for the Savage Truck Line, and noted the Savage truck as the carrier on his bill.

The situation was described by Harold E. Harrington, an employee of the appellant in charge of its accounts. Called as a witness for the appellant, he testified as follows:

"At different terminals we had more freight than our own equipment could take care of, and we had to rely on other carriers at certain points since we could not bring

them empty. We had an overflow of freight from Suffolk to Atlanta, Ga., and we would have to lease equipment and the same thing would apply out of New York, Philadelphia and Baltimore."

This witness also said that it had been his practice to include in the reports of gross revenues all revenues without deduction of the amount paid other carriers on account of operation similar to the above until the question was raised by an auditor employed by the appellant.

Said Mr. A. S. Boatwright, an auditor of the Corporation Commission:

"The facts are that the Savage Truck Line has hired equipment to supplement his own equipment to carry out inter-city hauls in which the vehicles he employed carried the manifest and other evidence of freight just the same as his own equipment did, and the revenue they derived from such equipment, or the amount he paid for the vehicle, he has charged and debited against his revenue, and which I have not allowed in my audit and put back there."

All of the witnesses, including Savage, repeatedly referred to the equipment of other carriers used by Savage for the transportation of his cargo as "leased equipment." In fact, there was no evidence that it was ever otherwise considered.

Carriers whose equipment was used by Savage, in the manner stated, were not required to report the amounts paid to them by Savage as a part of their gross receipts,— such receipts were not attributed by the Commission to their transportation business. The tax was laid at the source of the revenue and imposed but once.

Savage's defense was that he had paid all that was due from him. Specifically, he contended that the amounts paid other carriers for the use of their equipment in transporting his freight should be considered as a revenue of the other carriers, and that the Commission had erroneously included certain miles travelled by his motor vehicles over streets of cities and towns on State-selected routes through such cities and towns in computing his tax.

The Commission ruled against him on both contentions. The first contention of the appellant is answered by the fact that he used the equipment of other carriers for the transportation of goods he had contracted to carry, and that such goods moved by virtue of his contract in that equipment, under his freight bills, as his cargo. The amounts paid to the other carriers for the use of their equipment was but an item of the cost of appellant's operation. It matters little whether the agreement for the use of the vehicle of the other carrier be termed a lease, or a payment for use, or rent for service. The use of the vehicles of others saved Savage the expense of using his own equipment. The amounts paid out by Savage were just as any other expense of operation, rent, wages, or commissions. The vehicles of the other carriers were merely the agency for the transportation of the cargoes of Savage. Savage received the payments for the transportation. The payments constituted a part of his gross receipts in the transaction of his business. The words "gross receipts" mean "whole, entire, total receipts."

In support of his second contention that the miles travelled over streets in cities and towns were improperly included in Virginia mileage in computing his gross receipts tax, the appellant relies on the recent case of *Brooks Transp. Co.* v. *Lynchburg*, 185 Va. 135, 37 S. E. (2d) 857.

In that case we had under consideration section 11 of chapter 360 of the Acts of 1932, which provided that:

"Nothing in this act shall be construed to preclude any city or town through which any motor vehicle carrier operates from imposing a reasonable charge on such motor vehicle carrier for the use of the streets, roads or routes, including bridges, other than toll bridges maintained by such cities or towns; * * *."

There we held that since the city, in fact, performed the actual physical work attendant upon the maintenance of such streets, its authority to impose the charge was not affected by the contribution of funds by the State to aid in defraying the cost of such maintenance. The principal

question was whether the city had the power to tax, not whether the State was precluded from doing so. The statute merely gave to the city a new power. The power of the State to impose a similar tax was not contested. In fact, it was contended that only the State could impose the tax.

It may be well to refer here to the provision of section 36 of chapter 377, Acts of 1942, which provides that, "All taxes so collected shall be credited to the highway maintenance and construction fund." By section 9 of chapter 225, Acts of 1942, as amended, Virginia Code (Michie), section 1975pp, the State Highway Commissioner is authorized to select the streets in cities and towns having more than "3500 inhabitants * * *," as he may deem "best for the handling of traffic in such towns and cities, from or to any road in the State highway system, * * *." It is then provided that if the streets so selected be maintained by a city or town up to the standards of maintenance of the State Highway system adjoining such town or city, the State Highway Commissioner "shall cause to be paid to such town or city to be used by it in the maintenance and improvement, including construction and reconstruction of streets, * * *" the sum of $4,000 each year for each mile of such street so selected within the town or city, "one-third thereof to be paid from the State Highway maintenance fund and the remaining two-thirds from the State highway construction fund * * *."

"Streets and alleys in towns and cities" are included in the definition of a "highway" as defined by section 1 of "The Motor Vehicle Code of Virginia." Acts of 1932, page 614, Virginia Code, 1942 (Michie), section 2154(49).

The gross receipts tax is levied as compensation for the use of the highways of the State. It is collected by the State and placed in a fund to be contributed by the State to the maintenance and construction of roads and streets included in the selected routes of the State Highway sys-

tem. Streets of cities and towns which do not receive aid from the State are excluded in the computation of the tax.

█ There must have been some reason for the legislature to use the word "exclusively" in qualification of the word "maintained" in the Act of 1942. It was omitted in the same connection in the 1932 Act. Effect must be given to every word of a statute.

█ It is also proper to consider that the word "maintain" has several meanings, each depending upon the context of the statement in which it is used. It is defined in Webster's New International Dictionary (2d Ed.), Unabridged, as meaning, among other things, "to support," and "to bear the expense of." In the Act of 1932, we held that it meant the physical work incident to the maintenance of the streets. According to the evidence in this case, cities receive no physical aid in the upkeep of their streets, even if they be included in State-selected routes. As employed in the Act of 1942, and considered in connection with the word "exclusively" and the whole context, it is manifest, we think, that the legislature had in mind the contribution of the State towards the maintenance of the streets on State-selected routes. Therefore, in that statute the word "maintained," used in its broad sense, embraced the support given to the city by the contribution of funds; otherwise, there could have been no reason to modify the word "maintained" by the word "exclusively."

█ The streets in question are physically "maintained" by the towns and cities, but they are not "maintained exclusively by any city or town."

Moreover, the record discloses that, for a period of fourteen years, the Corporation Commission, in its construction of the statutes imposing the gross receipts tax upon carriers, held that the miles travelled over the State-selected streets of cities and towns, for the maintenance and construction of which contributions were made by the State, should be included in the Virginia miles in computing the tax. The statutes have been amended from time to time, and

there has been no change or modification of the construction of the Commission. It also appears that until this case arose, the appellant himself had so construed the statute in making his reports to the Commission.

■ "So, also, the practical construction given to a statute by public officials, and acted upon by the people, is not only to be considered, but in cases of doubt will be regarded as decisive. It is allowed the same effect as a course of judicial decision. The legislature is presumed to be cognizant of such construction, and, when long continued, in the absence of legislation evincing a dissent, the courts will adopt that construction." *South East Pub. Service Corp.* v. *Commonwealth*, 165 Va. 116, 126, 181 S. E. 448. *Smith* v. *Bryan*, 100 Va. 199, 204, 40 S. E. 652, 654, and cases cited.

Nothing that was said in *Brooks Transp. Co.* v. *Lynchburg, supra,* was intended to overrule the construction heretofore placed by the State Corporation Commission on the gross receipts tax acts.

The judgment of the State Corporation Commission is accordingly affirmed.

*Affirmed.*