# Richmond

## BAGGETT TRANSPORTATION COMPANY, INC. V. COMMONWEALTH OF VIRGINIA.

November 30, 1953.

Record No. 4126.

Present, All the Justices.

The opinion states the case.

*Leith S. Bremner, Robert Lewis Young* and *Forrest Smith,* for the appellant.

*J. Lindsay Almond, Jr., Attorney General, Francis C. Lee, Assistant Attorney General* and *Frederick T. Gray, Assistant Attorney General,* for the Commonwealth.

HUDGINS, C.J., delivered the opinion of the court.

The only question presented in this case is whether Baggett Transportation Company, Incorporated, an Alabama corporation, engaged in both intrastate and interstate transportation of property for hire by motor vehicle in Virginia, is exempt by reason of reciprocity agreements between Alabama and Virginia, from the payment of the gross receipts road tax imposed by Code sec. 58-638. From an adverse ruling by the State Corporation Commission, hereinafter designated "Commission," the Baggett Transportation Company appealed.

The question arose on a rule issued by the Commission, against Baggett Transportation Company, Incorporated, hereinafter designated "appellant," requiring it to show cause why it should not be penalized for failure to pay $6,891.45 gross receipts tax assessed under the foregoing statute for operation of its motor vehicles in interstate transportation of property over the highways of Virginia for the period from January 1, 1949, through December 31, 1951.

The agreed facts are stated in appellant's brief substantially as follows:

Appellant is a non-resident corporation organized under the laws of the State of Alabama with its principal and only office in the city of Birmingham. It possesses a certificate of public convenience and necessity issued by the Interstate Commerce Commission to operate interstate as a contract carrier by motor vehicle of explosives over irregular routes in forty-two States. It also has certain authority to transport cotton yarn in interstate commerce and certain rights to operate as a motor contract carrier of property intrastate in Virginia. These last two types of authority are not here involved. Appellant has paid the road tax on motor carriers calculated on fuel used within the State provided for by Article 12, Chapter 12, Title 58, Code of Virginia, 1950, whether its vehicles passing through Virginia were owned by it or leased from others. It has also paid the road tax on motor vehicle carriers of property, based on gross receipts, provided for in Article 13, Chapter 12, Title 58, Code

of Virginia, 1950, on all of its operations intrastate in Virginia. It concedes that if it is liable for any gross receipts tax for its interstate transportation of property over the highways of the State, the amount assessed is correct, but it declined to pay this sum because it claimed it is exempt from such tax under the reciprocity agreements existing between Virginia and Alabama during the period for which taxes were assessed.

The transportation of explosives by appellant has not been a regular operation from one fixed point to another, as its orders from the army and navy require it to transport such freight from and to various installations. Approximately 45% of the motor vehicle equipment used by appellant in its operation is owned by it and the other 55% is owned by other persons under long term leases to it. Under the terms of these leases and in accord with applicable statutes and rules of the Interstate Commerce Commission, absolute control and responsibility for such operations are vested in appellant. Appellant requires all leased transportation equipment to be taken to Birmingham where it is inspected and repainted with appropriate colors, including appellant's name and its operating authority. It is then registered and licensed in Alabama, the State of appellant's domicile.

In June, 1949, Howard W. Toone, of Alexandria, Virginia, leased his truck to appellant and took it to Birmingham where it was inspected, re-painted and the required lettering of appellant's name and operating authority was placed thereon. For some time this truck was not used in Virginia at all, but eventually appellant was awarded a contract by the Government to transport explosives from Radford, Virginia, to Indian Head, Maryland. Toone was assigned to use his truck in this operation. As the needs of appellant under this contract increased, Toone purchased several additional trucks which were placed under similar long term leases to appellant. Toone never possessed any authority to operate as an interstate contract carrier of prop-

erty. Prior to June, 1949, he had authority from the Commission to do intrastate hauling in Virginia, but he did not exercise this authority during the time here in question.

During the period involved Toone's trucks bore Alabama license plates and a part of the time both Virginia and Alabama license tags.

The assessment under consideration also involves a few operations of other vehicles leased by appellant from other residents of Virginia. Since these operations were not large, and seem to involve no questions different from those presented by the case of vehicles under lease from Toone, no further reference will be made thereto.

Code sec. 58-638 imposes a gross receipts tax upon every person, resident and non-resident, who by motor vehicle, transports property for hire over the highways of Virginia, in the following language: "Except as hereinafter otherwise provided, every person who operates, or causes to be operated, on any highway in this state, any motor vehicle, trailer or semi-trailer for the transportation of property for compensation, whether for rent, or for hire, or as a contract carrier, or as a common carrier, and every common carrier by motor vehicle, trailer or semi-trailer of passengers, shall pay quarterly to the. State Treasurer, on or before the fifteenth day of April, July, October and January of each year, in addition to any other fees and taxes imposed by law upon motor vehicles, trailers and semi-trailers, and upon the operation thereof, and in addition to any motor fuel tax paid or payable by such person, a road tax calculated on the gross receipts derived from such operations during the quarter year ending with the preceding month, according to the following schedule:

"(1) Two per centum of the gross receipts derived by such person from all intrastate operation; and

"(2) Two per centum of such proportion of the gross receipts derived by such person from all interstate operations as the total number of miles traveled in interstate operations by the vehicles of such person on the public highways of

this State bears to the total number of miles traveled in interstate operations by the vehicles of such person both within and without this State * * * ."

Appellant contends that it is exempt from the payment of the tax imposed by this statute by virtue of the reciprocal agreement, between Virginia and Alabama, bearing date June 17, 1948. The position of the Commonwealth is that appellant is not entitled to reciprocity under this agreement because of the provisions of Paragraph 2 thereof, which reads as follows:

"This Agreement shall apply only to persons, firms and corporations, (who are now legal residents, or who hereafter may become legal residents of either of the said reciprocating States,) and who are authorized to engage, or are engaged in the operation of motor vehicles duly licensed in the State which is a party to this Agreement and of which the owner is a legal resident."

The Commonwealth contends, and the Commission so held, that under the provisions of this paragraph, in order for a resident of Alabama to be entitled to reciprocity in Virginia, he must not only operate the vehicles in Virginia, but the vehicles must be owned by him or some other non-resident entitled to reciprocity.

On the other hand, appellant contends that when the nature and incidence of the Virginia gross receipts road tax are considered together with the nature of appellant's operations, all of which are strictly governed by law, ownership of the vehicles used in such operations is immaterial.

In support of this contention it cites *Savage* v. *Commonwealth*, 186 Va. 1012, 45 S. E. (2d) 313, where it was held that when a motor carrier augments its equipment by the lease of additional trucks, the operation of such leased trucks is wholly and exclusively the business of the lessee-carrier, and that it is he, the lessee, who owes the gross receipts road tax upon revenue earned by use of such equipment. The Commission imposed the tax upon the lessee-carrier in this case, as it did in the *Savage* case, and not upon

the owner of the leased vehicles. It is not contended in this case, as the lessee-carrier contended in the *Savage* case, that the lessors of the vehicles were liable for the tax.

Appellant in its brief cites numerous authorities which hold that the mere lease of transportation equipment to a carrier does not thereby make the lessor a carrier. The owner may part with the possession and control of his transportation equipment to another for use in transportation and when he does, that other becomes the carrier and assumes all responsibility for such operations. But these authorities are not pertinent to the question here presented.

Appellant concedes that it, and not the owner of the vehicles, is engaged in transportation of property for hire. Toone, the lessor, is not engaged in the business of interstate transportation. The statute imposes the gross receipts tax upon the operator, which in this case is the appellant. It concedes this, but contends that in as much as it is a non-resident operator, it is entitled to the benefit of the exemption paragraph in the reciprocity agreement above referred to.

Appellant argues that the word "owner" used in paragraph 2, should be construed to mean "operator." Yet in the same sentence, reference is made to persons "engaged in the operation of motor vehicles." Paragraph 3 of the reciprocity agreement deals with automobiles "duly licensed in the State of which the owner and operator is a legal resident." Paragraph 4 relates to "owners of trucks," etc. Since the words "owner" and "operator" are used in different places in the agreement to convey the ordinary meaning of the words, it seems reasonably clear that the high contracting parties meant "owner" when they said "owner" and "operator" when they said "operator."

The decision of the case turns not upon whether appellant is a carrier, but whether as such carrier, it is exempt from liability for gross receipts tax under the terms and conditions of the reciprocity agreement. The determination of this question depends upon the proper interpretation of the agreement. In order for appellant to bring itself within

the conditions of the agreement, it is incumbent upon it to show, (1) that it is a legal resident of Alabama, (2) engaged in operating motor vehicles duly licensed in Alabama and (3) is the owner of such vehicles. The appellant has not brought itself within the three named conditions. It admits that it is not the owner of the vehicles from which the receipts assessed were derived, and that the vehicles were owned by a resident of Virginia. Reciprocity was never intended to exempt from gross receipts taxation those receipts derived from hauling in Virginia, by vehicles belonging to Virginia owners.

This intent, as expressed in the reciprocity agreement executed between the States on June 17, 1948, was clarified by the redraft of all reciprocity agreements effective June 25, 1952. The constitutionality of the latter agreement was upheld in the able opinion by Mr. Justice Spratley, in *Atlantic & Danville Ry Co.* v. *H. L. Hooker, et al,* 194 Va. 496, 74 S. E. (2d) 270. The latter reciprocity agreement appears in the opinion at page 505, and sets forth in clear and unmistakable terms, just what operations by out-of-state interstate carriers of property were exempt from the imposition of the gross receipts road tax and what operations of out-of-state interstate carriers were not so exempt. In defining what out-of-state carriers and owners of vehicles were not exempt from the imposition of the gross receipts road tax, the agreement states:

"Provided, however, that reciprocity is not granted in the following cases and does not apply to:

"(a) Revenue derived by a carrier from the transportation in interstate commerce of property received by him in Virginia for transportation to a point in Virginia.

"(b) Revenue derived from the transportation of property by any motor vehicle, tractor, trailer, or semi-trailer required to be registered and licensed in Virginia, *or which is owned, in whole or in part, by a citizen of Virginia,* or which is owned by a corporation incorporated in Virginia, or which is owned by a corporation a majority of whose

stock is owned by citizens of Virginia * * * ." (Italics supplied.)

Commissioner Ralph T. Catterall, the draftsman of the above agreement, testified in that case, and in stating the purpose of the re-draft said:

"The second section is a blanket section which exempts all out-of-state carriers from the gross receipts tax so long as their home state does not impose any third level tax on Virginia carriers.

"The third section is a list of exceptions to the second section and gives effect to the policy I mentioned a moment ago of requiring *all Virginia citizens* and *all Virginia vehicles* to pay the gross receipts tax." (Italics supplied.)

The reciprocity agreement of June 25, 1952, is pertinent to the decision in this case because it expresses in clear and unambiguous language the *original* and the *present* intention of the contracting parties to exclude from exemption the gross receipts tax on revenues derived from the use of motor vehicles on the highways of Virginia which were and are owned in whole, or in part by a citizen of Virginia.

The language of Code sec. 58-638 imposing the gross receipts tax is clear and explicit. For a carrier to be exempt from the imposition of this tax, the exempting provisions must be equally clear, or as it is sometimes said, the language must be so clear and unmistakable as to leave no doubt as to the intention to exempt.

It was said in *Hunton* v. *Commonwealth*, 166 Va. 229 at p. 236, 183 S. E. 873 at p. 876, that "Taxation being the rule and exemption therefrom the exception, constitutional and statutory provisions exempting property from taxation should be strictly construed against the exemption and any doubt should be resolved in favor of the State."

The same principle was thus expressed in *Huffman Co.* v. *Unemployment Compensation*, 184 Va. 727, 36 S. E. (2d) 641:

"Where there is an exemption from a general tax, the statute should be strictly construed against the party assert-

ing such exemption, and the rule requiring liberal construction in favor of a taxpayer is not applicable." In 51 Am. Jur., Taxation, sec 524, p. 527, the same principle is expressed as follows: "An exemption from taxation must be clearly defined and founded upon plain language, without doubt or ambiguity."

The Commission correctly applied these principles and we are in accord with its conclusions expressed in the following language: "We conclude that the taxes which are clearly imposed by the statute are not clearly waived by the agreement."

It is not so clear that appellant, although a resident of Alabama, is entitled to any reciprocity. It is engaged in both intrastate and interstate transportation of property by motor vehicle in Virginia. Paragraph 5 seems to exclude a carrier engaged in both operations from the benefit of the exemption from tax. This paragraph is couched in the following language:

"Motor vehicles, including trucks, truck tractors, and semi-trailers, transporting property for hire and/or compensation, may be operated in both states parties to this Agreement, without limitation as to the number of trips, and without the payment of any fees, ad valorem taxes, license taxes or mileage taxes whatsoever, when the owner thereof engages *only* in interstate commerce in the State granting reciprocity to that of his domicile * * * ."

In the able opinion prepared by Commissioner Ralph T. Catterall, attention is called to this paragraph and it is stated:

"It is less than perfectly clear that Baggett would have been entitled to reciprocity even if it had been the owner of these vehicles." However, the Commission based its decision, as we do, on the fact that the gross receipts tax was clearly imposed upon the operations of appellant by the statute and that an exemption from such tax was not clearly stated in the exemption provisions.

The judgment of the Commission is affirmed.

*Affirmed.*