# Richmond

## THE ADLEY EXPRESS COMPANY v. COMMONWEALTH OF VIRGINIA.

April 25, 1955.

Record No. 4353.

Present, All the Justices.

The opinion states the case.

*I. W. Jacobs* and *William C. Worthington,* for the appellant.

*J. Lindsay Almond, Jr., Attorney General* and *Kenneth C. Patty, Assistant Attorney General,* for the Commonwealth.

EGGLESTON, J., delivered the opinion of the court.

This is an appeal of right from an order of the State Corporation Commission denying the application of The Adley Express Company for a refund of gross receipt road taxes imposed under Code, § 58-638, for its operation of certain motor vehicle carriers over the Virginia state highways during the period of May 1, 1953 to March 31, 1954. The Adley Express Company claimed that it was exempt from such taxes under the provisions of the reciprocity agreement approved by the Governor of Virginia on June 25, 1952. The Commission held otherwise and hence this appeal.

 The Adley Express Company, hereinafter called Adley, is a Connecticut corporation, all of whose stockholders are residents of that State. Under the authority of the Interstate Commerce Commission it is engaged in the transportation of commodities in interstate commerce by trucks. Savage Truck Line, Inc., is a Delaware corporation, with headquarters at Norfolk, Virginia, and holds from the Interstate Commerce Commission authority to engage in the same business as, but in a different territory from, that conducted by Adley.

On April 1, 1953, H. E. Savage, Jr., a resident of Virginia Beach, Virginia, who owned all of the capital stock of Savage Truck Line, Inc., gave to Richard H. Simons, a resident of Connecticut, a written option to purchase such stock at the price of $300,000, payable in five installments of $60,000 each. The option was transferable and was for one year or for such additional time as the parties might mutually agree upon.

On the same day, H. E. Savage, Jr., Savage Truck Line, Inc., Richard H. Simons and Richard S. Wilkins, the last-named being also a resident of Connecticut, entered into a written agreement under the terms of which Savage deposited in escrow with Wilkins all of the shares of the capital stock of Savage Truck Line, Inc., "to be held and disbursed" as therein provided. This agreement provided that "in the event the absorption of the said Savage Truck Line, Inc.," by Adley "is not approved by the Interstate Commerce Commission," such shares of stock are to be "transferred to the said Richard H. Simons or his assigns;" and "in the event the said absorption is approved by the said Interstate Commerce Commission," the shares of stock are to be "returned to I. W. Jacobs, general counsel for Savage Truck Line, Inc., who shall proceed to dissolve" the latter corporation. The escrow agreement further provided that it "should be read and construed in conjunction with all other documents pertaining to the merger and/or purchase by the said Adley Express Company of the said Savage Truck Line, Inc., and in keeping with the spirit thereof."

On April 22, 1953, Savage Truck Line, Inc., entered into a written contract with Adley under which Savage Truck Line, Inc., agreed to sell to Adley, and Adley agreed to purchase, "all of the operating rights, property, assets and all other things * * *, including * * * trucks, tractors, trailers * * * or other automotive equipment" of Savage Truck Line, Inc. For these rights and properties Adley agreed to pay to the seller the sum of $300,000 in five installments of $60,000 each. The contract further provided that it was

"subject to the approval of the Interstate Commerce Commission" and that each of the parties would cooperate in executing all necessary papers and documents as might be required by the Commission.

The proposed purchase by Adley of the properties and rights of the Savage Truck Line, Inc., was submitted to the Interstate Commerce Commission but final action thereon has not been taken. Pending such action that body entered an order on May 21, 1953, authorizing Adley "to lease the motor-carrier properties" of the Savage Truck Line, Inc., "consisting of 7 trucks, 70 tractors, 133 semi-trailers," including its "operating rights," "at a total rental not exceeding $22,000 per month; *provided, however*, that if the authority herein granted is exercised, *none of the properties leased under this order shall be purchased by the lessee during the period of the lease.*" (Italics supplied.)

The order further provided that it was not to become effective "unless, within 30 days from the date hereof," three copies of such lease be "filed with the Commission." Although a copy of such lease is not before us, it is admitted that it was entered into in conformity with the order and that at the time of the hearing before the State Corporation Commission the parties were acting thereunder.

While there is evidence that Adley has paid Savage Truck Line, Inc., a considerable sum on account of the purchase price stipulated in the contract, it also appears that the title papers to the motor vehicle equipment leased and delivered to Adley are still registered in the name of Savage Truck Line, Inc., with the Motor Vehicle Department of Virginia.

The history and text of the reciprocity agreement approved by the Governor of Virginia on June 25, 1952, are found in *Atlantic & Danville Ry. Co. v. Hooker*, 194 Va. 496, 502 ff., 74 S. E. (2d) 270, 275 ff., and need not be repeated here. Suffice it to say, the purpose and effect of such agreement were to exempt from the payment of the gross receipts road tax imposed by Code, § 58-638, the revenue derived from "out-of-state interstate carriers of freight,"

where the home states of those carriers refrain from imposing a similar tax on the revenues derived from similar carriers from Virginia. It is conceded that the State of Connecticut does not impose a similar tax on the revenues derived from similar Virginia carriers.

The agreement, approved by the Governor of Virginia on June 25, 1952, carries this provision:

"Provided, however, that reciprocity is not granted in the following cases and does not apply to: * * *

"(b) Revenue derived from the transportation of property by any motor vehicle, tractor, trailer, or semi-trailer required to be registered and licensed in Virginia, or which is owned, in whole or in part, by a citizen of Virginia, or which is owned by a corporation incorporated in Virginia, or *which is owned by a corporation a majority of whose stock is owned by citizens of Virginia. * * *"* (Italics supplied.)

In *Baggett Transp. Co.* v. *Commonwealth*, 195 Va. 359, 78 S. E. (2d) 702, we held that under the language of the agreement just quoted, the revenue from motor vehicle equipment which was owned, in whole or in part, by a citizen of Virginia, but operated under a lease to a nonresident carrier, was not granted reciprocity and therefore was not exempt from such gross receipts road tax.

In the present case the State Corporation Commission held in its written opinion that under the arrangement now in effect between the parties the motor vehicles which Savage Truck Line, Inc., has delivered to Adley are still owned by Savage Truck Line, Inc.; that the stock of Savage Truck Line, Inc., is still owned by H. E. Savage, Jr., a resident of Virginia; and that since such motor vehicles are thus "owned by a corporation a majority of whose stock is owned by citizens of Virginia," the revenue derived from the operation of such vehicles is excluded from reciprocity and excluded from exemption from such tax under the provisions of the reciprocity agreement.

Adley challenges the holding that under the arrangement

in effect between the parties the vehicles are still owned by Savage Truck Line, Inc., and that the stock in the latter concern is still owned by H. E. Savage, Jr. Adley insists that by virtue of the sales agreement of April 22, "true ownership" of the vehicles is in it; that it has paid a considerable sum toward the stipulated purchase price; that "Adley is irrevocably bound to consummate the purchase;" and that "Savage has no right, and claims no right, to disavow the sale and ever claim ownership of the trucks again." Moreover, it says that by virtue of the option and the escrow agreement with respect to the sale of the stock, Savage has "irrevocably" divested himself of all interest in the stock.

We agree with the holding of the State Corporation Commission that the vehicles are still owned by Savage Truck Line, Inc. Under its express terms the sales agreement of April 22 was "subject to the approval of the Interstate Commerce Commission." It is undisputed that that approval has not been obtained. The very argument that "Adley is irrevocably bound to consummate the purchase" is an admission that it has not been consummated. That the seller has no right to recede from its contract of sale is not equivalent to a consummation. Until the sale has been consummated the vehicles are owned by Savage Truck Line, Inc.

In the meantime, by order of the Interstate Commerce Commission, the equipment which Savage Truck Line, Inc., delivered to Adley is being operated under a "lease." Under the express terms of that order "none of the properties leased under this order shall be purchased by the lessee during the period of the lease." As the State Corporation Commission aptly pointed out in its opinion: "Since the Interstate Commerce Commission, acting within the scope of authority conferred on it by Act of Congress, has permitted Adley to operate these vehicles in interstate commerce as lessee and not as owner, it is legally impossible for Adley to operate them as owner and not as lessee."

We also agree with the Commission that H. E. Savage, Jr., is still the owner of the stock of Savage Truck Line, Inc. Aside from the fact that Adley's petition for refund of the taxes so alleges, a consideration of the documents signed by the parties points to the same conclusion. Savage has given to Simons a mere option to purchase the stock, and while by the terms of the option and the escrow agreement Savage may have put it beyond his power to recede from that position, until the option has been exercised Savage is still the owner of the stock. It is admitted that the option has not been exercised but awaits the action by the Interstate Commerce Commission on the proposed absorption by Adley of the Savage Truck Line, Inc. Thus the parties are in exactly the same position they were when the option and escrow agreement were signed.

As we have several times said, since taxation is the rule and exemption therefrom the exception, provisions exempting property from taxation should be strictly construed against the party asserting such exemption. *Hunton* v. *Commonwealth*, 166 Va. 229, 236, 183 S. E. 873, 876; *Huffman Const. Co.* v. *Unemployment Comp. Comm.*, 184 Va. 727, 740, 36 S. E. (2d) 641, 646; *Baggett Transp. Co.* v. *Commonwealth*, *supra*, 195 Va., at page 366, 78 S. E. (2d), at page 706.

In its assignments of error Adley asserts that in so far as Code, § 58-638, imposes a tax on revenue derived from carriers operating in interstate commerce, it is in contravention of the commerce clause of the Federal Constitution (Art. I, § 8). While we were told in the oral argument that this point was not waived, it was not pressed before us. In any event, the validity of such a tax imposed for the use of state highways by an interstate carrier was settled in *Aero Mayflower Transit Co.* v. *Board of Railroad Com'rs.*, 332 U. S. 495, 68 S. Ct. 167, 92 L. ed. 99.

The order of the Corporation Commission is

*Affirmed.*