**COMMONWEALTH OF VIRGINIA, claimant, Appellant,**

v.

**J. Archie CANNON, Trustee in Bankruptcy for Miller Motor Line of North Carolina, Inc., Appellee.**

**No. 7063.**

United States Court of Appeals Fourth Circuit.

Argued Oct. 19, 1955.
Decided Dec. 22, 1955.

Russell A. Carlisle, Jr., Richmond, Va., for appellant.

Wm. J. Adams, Jr., Greensboro, N. C., for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal from an order disallowing a claim in the reorganization proceedings in bankruptcy of the Miller Motor Line of North Carolina, Inc. The claimant is the Commonwealth of Virginia, which has asserted a claim in the sum of $10,799.27 for gross receipts road tax alleged to be due under the Virginia statute by the debtor, Miller Motor Line of North Carolina, for operation of trucks on the roads of Virginia for the period between January 1, 1951 and June 30, 1953. The trustee relying upon reciprocity arrangements in effect between Virginia and North Carolina during the period in question denies liability of the debtor for the claim thus asserted.

The debtor is a North Carolina corporation, having its principal place of business in North Carolina and operating trucks in interstate commerce, a portion of this operation being over roads of Virginia. The State of North Carolina, during the tax period here involved and for several years prior thereto, consistently followed a reciprocity policy by which it exempted from gross receipts taxes motor carriers of various states operating into or through North Carolina including motor carriers of Virginia. Under authority granted by the General Assembly of Virginia, Code of Virginia of 1950, § 46-22, Governors of Virginia, acting upon recommendations of the reciprocity Board created by that legislation, on October 28, 1949 and January 22, 1952 issued proclamations extending reciprocity to all out of state motor carriers of freight operating interstate in or through Virginia provided their respective home states reciprocated by refraining from imposing like taxes on Virginia carriers. On June 25, 1952, a reciprocity proclamation was issued by the Governor pursuant to the statute revoking all prior reciprocity agreements covering the gross receipts road tax and providing for reciprocity commencing July 1, 1952, with certain exceptions, one of which, being the one here relied on, relates to operations by corporations the majority of whose stock is owned by citizens of Virginia. The pertinent portion of the exception is as follows:

"Provided, however, that reciprocity is not granted in the following cases and does not apply to:

\* \* \* \* \* \*

"(b) Revenue derived from the transportation of property by any motor vehicle, tractor, trailer or semi-trailer required to be registered and licensed in Virginia, or which is owned, in whole or in part, by a citizen of Virginia, or which is owned by a corporation incorporated in Virginia, or which is owned by a corporation a majority of whose stock is owned by citizens of Vir-

ginia. Except that reciprocity granted in the case of pick-up or delivery movements of property in interstate commerce by means of vehicles registered and licensed in Virginia, if the vehicles are owned and operated by the out-of-state carrier who transports the property into or out of Virginia, and if the carrier makes no separate charges for the pickup or delivery service."

It will be noted that this proviso became operative July 1, 1952. At that time all of the stock of debtor was owned by a Virginia corporation, which sometime prior thereto had been operating as a carrier but which had then ceased such operation and was engaging in no business.[1] The stock of the Virginia corporation was owned in its entirety by one W. T. Miller who was not a citizen of Virginia but of North Carolina. Later, the debtor and the Virginia corporation carried through a reorganization which became effective June 30, 1953 as the result of which debtor acquired all the assets of the Virginia corporation and assumed its liabilities issuing its own stock to Miller.

 In as much as the State of North Carolina was exempting Virginia carriers from the gross receipts road tax, there can be no question but that debtor was exempted from the Virginia tax under the express terms of the Virginia reciprocity proclamations in effect up until June 30, 1952. It is true that W. T. Miller, the owner of the stock of the Virginia corporation, who acquired it on February 3, 1951, was a citizen of Virginia from that date to July 1, 1951, when he became a citizen of Georgia, of which state he remained a citizen until July 1, 1952, when he became a citizen of North Carolina; and it is argued that during the period between February 3, 1951 and July 1, 1951, the ownership of stock in the Virginia corporation was in a citizen of Virginia, that the exception above quoted from the proclamation of May 25, 1952, was a mere embodiment of the policy theretofore followed by the state and that tax would be due at least for this period. The answer is that we must look to the proclamations of the Governors to determine what the policy of the state was, that these have the effect of statutory enactments, and that until the proclamation of May 25, 1952, which became operative July 1, 1952, they contain no such exception.

The only question worthy of consideration, therefore, is whether the ownership of debtor's stock by the Virginia corporation after July 1, 1952, brings it within the terms of the exception contained in the proviso above quoted. We think it clear, however, that this question should be answered in the negative. While corporations are to be treated as citizens for some purposes, it is not reasonable to suppose that it was intended by the proclamation here under consideration that a foreign corporation which was in reality owned by a citizen of the foreign state of incorporation should be exempted from its provisions merely because a company holding the stock of such corporation happened to have been incorporated in Virginia. The policy embodied in the exception was to tax "hauling in Virginia, by vehicles belonging to Virginia owners",[2] not to deny the benefits of reciprocity to a bona fide foreign corporation owned by non-residents. It is no

---

[1.] Debtor was incorporated in 1948 under the laws of North Carolina by the Virginia corporation to carry on a business which had terminal facilities at Friendship, North Carolina. All of its stock, except a few qualifying shares, was owned by the Virginia corporation. Both corporations engaged in transportation but of a different character, the Virginia corporation engaging only in intrastate transportation from then until June 7, 1952, when it sold to the Bralley Trucking Company of Richmond, Virginia, all of its assets except cash, certain accounts receivable and the capital stock of the debtor corporation.

[2.] See Baggett Transportation Co., Inc., v. Commonwealth of Virginia, 195 Va. 359, 78 S.E.2d 702.

answer to this to say that the stock of the foreign corporation was in fact owned by the Virginia corporation, since the latter was nothing more than a holding company for the stockholder who was a non-resident. This is in accord with the policy embodied in reciprocity, which, to use the language of Mr. Justice Spratley in Atlantic & Danville Ry. Co. v. Hooker, 194 Va. 496, 74 S.E.2d 270, 280, is "the policy of allowing residents of other states the free use of roads of Virginia when the home states of such non-residents allow the free use of their roads to residents of Virginia".

In Baggett Transportation Company, Inc., v. Commonwealth, 195 Va. 359, 78 S.E.2d 702, 706, it was held that an Alabama corporation operating vehicles leased from one Toone, a citizen of Virginia, was not entitled to the reciprocity exemption with respect to such vehicles. In dealing with the policy embodied in the reciprocity agreement, Chief Justice Hudgins speaking for the court said:

"Commissioner Ralph T. Catterall, the draftsman of the above agreement, testified in that case, and in stating the purpose of the re-draft said:

" 'The second section is a blanket section which exempts all out-of-state carriers from the gross receipts tax so long as their home state does not impose any third level tax on Virginia carriers.

" 'The third section is a list of exceptions to the second section and gives effect to the policy I mentioned a moment ago of requiring *all Virginia citizens* and *all Virginia vehicles* to pay the gross receipts tax.' (Italics supplied.)

"The recipocity agreement of June 25, 1952, is pertinent to the decision in this case because it expresses in clear and unambiguous language the *original* and the *present* intention of the contracting parties to exclude from exemption the gross receipts tax on revenues derived from the use of motor vehicles on the highways of Virginia which were and are owned in whole, or in part by a citizen of Virginia".

There is nothing contrary to our conclusion here in Adley Express Co. v. Commonwealth, 196 Va. 1007, 86 S.E.2d 818. In that case all the stock of the Savage Truck Line, a Delaware corporation, was owned by a citizen of Virginia. The Savage Truck Line leased its vehicles to a Connecticut corporation which operated them and which held also a contract for their purchase. The denial of reciprocity was on the ground that the vehicles were "owned by a corporation a majority of whose stock is owned by citizens of Virginia". While this case, like the prior cases, holds, in accordance with general law, that language exempting from taxation is to be strictly construed, there is nothing in it that would justify a holding that the exception of ownership or operation of trucks by citizens, or by corporations the majority of whose stock is owned by citizens, should be stretched to include a mere holding company all of whose stock is owned by non-residents. Strict construction does not require or justify foolish construction. If in the case before us the stock of the Virginia company, or a majority thereof, had been held by citizens of Virginia, a very different case would be presented; but that is not the case here.

■■ Appellant relies upon cases to the effect that corporations are to be treated as citizens under certain acts of Congress and certain provisions of the Constitution of the United States. Appellee on the other hand points out that a corporation is not held to be a citizen within the Privileges and Immunities clause of that instrument. For a digest of these and kindred cases see 7 Words and Phrases, Citizen, pp. 255–262. None of these cases, however, are of much help in the solution of the question before us, which is whether ownership by a holding corporation, all of whose stock is held by a non-resident, is to be held ownership by a citizen of the state within the meaning of the language used in the reciprocity proclamation merely because the holding

corporation is incorporated under the laws of the state. In deciding the contrary we do not intend to hold that no corporation would be covered by the language, but are applying the well settled rule that "all laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language which would avoid results of this character. The reason of the law in such cases should prevail over its letter". United States v. Kirby, 7 Wall. 482, 19 L.Ed. 278; Holy Trinity Church v. United States, 143 U.S. 457, 459–462, 12 S. Ct. 511, 36 L.Ed. 226; Lau Ow Bew v. United States, 144 U.S. 47, 12 S.Ct. 517, 36 L.Ed. 340; Sorrells v. United States, 287 U.S. 435, 447–448, 53 S.Ct. 210, 77 L.Ed. 413.

As Chief Justice Taft pointed out in Swiss Nat. Insurance Co. v. Miller, 267 U.S. 42, 46, 45 S.Ct. 213, 214, 69 L.Ed. 504, "The term 'citizen or subject' may be broad enough to include corporations of the country whose citizens are in question (citing cases). Whether it is so inclusive in any particular instance depends upon the intent, to be gathered from the context and the general purpose of the whole legislation in which it occurs". Applying this rule here, it is doubtful whether "citizen" as used in the proclamation could be held to cover any sort of corporation since the language of the very section in which it occurs uses the word corporation where corporations are intended to be dealt with. Assuming, however, that ownership of stock by Virginia corporations would be sufficient where such corporations themselves are owned by citizens of Virginia, we think it clear that the language used has no application to a mere holding corporation owned by a non-resident of the state.

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.