## Richmond

COMMONWEALTH OF VIRGINIA, AT THE RELATION OF C. H. MORRIS-
SETT, STATE TAX COMMISSIONER V. JOHN B. MANZER.

April 24, 1967.

Record No. 6402.

Present, Buchanan, Snead, I'Anson, Carrico and Gordon, JJ.

*D. Gardiner Tyler, Assistant Attorney General* (*Robert Y. Button,
Attorney General*, on brief), for the appellant.

*Robert M. Musselman* for the appellee.

CARRICO, J., delivered the opinion of the court.

Code, § 58-293[1] provides that a person who buys or sells for another any kind of merchandise on commission shall be classified as a commission merchant and required to pay a license tax. The Code section does not apply, however, to a person selling on commission who meets the tests prescribed therein. One of those tests is that such person "has no office".

John B. Manzer, the petitioner, was assessed commission merchant's license taxes in the sum of $372.19 for the years 1957, 1958, 1959, and 1960 because, in the opinion of the Virginia Department of Taxation, he "sells merchandise on a commission basis" for others and "maintains an office in his home."

The petitioner, pursuant to Code, § 58-1130, filed an application in the trial court alleging that the assessments were erroneous because he "had no office" and "falls completely within the statutory exception to the commission merchant's license tax." He prayed that he be exonerated from the payment of the license taxes.

(1) "§ 58-293. *Commission merchants and brokers.*—* * *
"Every person, firm or corporation buying or selling for another any kind of merchandise on commission, except associations or organizations of farmers, including produce exchanges, organized and maintained by farmers for mutual help in the marketing of their produce and not for profit, shall be a commission merchant, provided, however, that this section shall not be construed as applying to any person who buys milk or cream for others and whose compensation is based on the butterfat content of such milk or cream and not on the market price, nor as applying to any person who on commission sells merchandise by sample, circular, or catalogue, where the merchandise subsequently delivered is not samples, who has no office, display room, store, or other definite place of business in the State, who has no stock of merchandise in his custody or possession or under his control at any time during the year, and who employs no person. . . .
"Every person, firm or corporation shall pay for the privilege of transacting the business of a commission merchant or broker the sum of twenty-five dollars, provided his commissions for the preceding year did not exceed two thousand dollars; but when his commissions exceeded two thousand dollars the tax shall be twenty-five dollars on the first two thousand dollars of commissions, fifty cents per one hundred dollars on the next eight thousand dollars of commissions and one dollar per one hundred dollars on all commissions in excess of ten thousand dollars; and if the license is to include the privilege of selling gold or silver coins, bonds, certificates of public or private debts or other securities, there shall be paid, in addition, the amounts required in each case to be paid by stockbrokers and in like manner.
"The license tax on every commission merchant or broker beginning business shall be the initial tax above prescribed, plus a tax in accordance with the foregoing scale measured by the commissions which it is estimated he will receive from the time he commences business to the following December thirty-first."

C. H. Morrissett, State Tax Commissioner, filed an answer on behalf of the Commonwealth asserting the validity of the assessments.

The trial court heard the evidence and, in its final order, ruled that the assessments were erroneous and were "exonerated in full." The Commonwealth was granted this writ of error. (Code, § 58-1138.)

The record discloses that the petitioner is a resident of Crozet, Virginia, and earns his livelihood as a "manufacturers' representative" for four firms. He travels three or four days a week, calling upon the firms' customers in Virginia, Maryland, Delaware, and the District of Columbia. He advises the customers "how to sell the product, how to merchandise it, how to display it." He also secures orders for merchandise through the use of catalogs and samples, although "most of the orders go from the customer directly to the companies." The merchandise is delivered by the selling company to the customer and does not pass through the petitioner's hands. The petitioner works "strictly on a commission basis."

The petitioner maintains no display room or store, carries no stock of merchandise, and employs no person. He does, however, have a room on the porch of his home where there is a desk, file cabinet, lamp, and telephone and where he "spends a day or so each week" working on orders, complaints, and requests for catalogs and advertising materials. He keeps his records in the room, and there also does "a lot of letter writing" and gets "a great deal of follow-up things from various clients." The customers occasionally call him on the telephone, and he calls them "once in a while."

The assessments in question were made following an audit by the Virginia Department of Taxation of the petitioner's state income tax return for 1958. R. A. Williams, an auditor for the Department, called upon the petitioner at his home, went over the return with him, and "made some adjustment in the expenses that were claimed." Williams then questioned the petitioner about the nature of his business and asked him if he had an office. The petitioner replied, "Yes, my office is in my home" and invited Williams "to see his office."

According to Williams, he looked at the office and said, "This is a nice arrangement," to which the petitioner responded, "Yes, it's very convenient for customers who come here to see me, and I keep my records here and I do a certain amount of entertaining here." However, the petitioner testified that his customers "don't call on me in person" and that although he entertained customers "seven or eight or 10 times a year" in his home, "they were in the living room, not in the office . . . and we have never discussed any ordering."

In any event, Williams told the petitioner that he was "liable for a commission merchant's license, and that we would have to compute the license for '57, '58, '59, and '60." Upon his return to Richmond, Williams computed the assessments and advised the petitioner he was being assessed as follows:

| "Year | Commission | Taxes, Penalties and Interest |
|-------|------------|-------------------------------|
| 1957 | $ 9,757.00 | $ 86.31 |
| 1958 | 11,463.00 | 102.48 |
| 1959 | 11,299.00 | 95.23 |
| 1960 | 11,515.00 | 88.17" |

Copies of the petitioner's 1958, 1959, and 1960 state income tax returns were introduced in evidence in the trial court. In his 1958 return, the petitioner claimed and was allowed the following deductions:

*"Office and entertainment expenses on road and at home:*

| | | |
|---|---|---|
| Cost of office at home— Cost $18,500 @ 4% @ 20% | $148.00 | |
| Operating expenses— $600.00 @ 20% | 120.00 | $268.00 |
| Entertainment expenses on road and at home | | 865.00 |
| Total office and entertainment expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . | | $1,133.00" |

In his 1959 return, the petitioner claimed and was allowed deductions as follows:

*"Office & Entertainment Expenses On Road and At Home*

| | |
|---|---|
| Cost of office at home | 268.00 |
| Entertainment Expenses on road & at home | 945.00 |
| | 1213.00" |

In his 1960 return, the petitioner claimed and was allowed these deductions:

"Cost of office at home—

| | | |
|---|---|---|
| heat | 180.00 | |
| Electricity | 240.00 | |
| Depreciation—cost $20000.00—life 20 years | 1000.00 | |
| 1/5 of | 1420.00 | 284.00 |
| Telephone | | 300.00 |
| Office supplies | | 26.96 |
| Entertainment expenses on road & at home | | 865.32 |
| | | [$1476.28]" |

It should be noted that the deduction of $300.00 for "Telephone" in the 1960 return was in addition to a deduction of $2401.50 for "Expenses away from home—rooms, meals, *telephone*, tips, etc." [Emphasis added.]

The Commonwealth contends that the petitioner has an office and therefore does not come within the exemption provisions of Code, § 58-293. The Commonwealth further contends that the petitioner is estopped to deny that he has an office because of his statements with respect thereto in his state income tax returns.

The petitioner contends that the legislature, in enacting Code, § 58-293, plainly implied that the word "office" should have the meaning given it in *Black's Law Dictionary*, Third Edition, as "a place for the regular transaction of business." That is so, the petitioner says, because of the use of the language exempting a commission merchant if he "has no office . . . *or other definite place of business.*" The petitioner then argues that since he does not maintain "a definite place of business, an office, where customers come and sales are made," he is exempt from paying the license taxes.

The petitioner further contends that he is not bound by the statements made in his income tax returns because estoppel does not apply to tax cases in Virginia.

Since we are dealing here with a statutory exemption from taxation, the provisions setting forth that exemption must be strictly construed against the taxpayer, and any doubt as to whether the exemption applies must be resolved in favor of the Commonwealth. The burden is upon the taxpayer to show that he comes within the terms of the exemption. *Express Co.* v. *Commonwealth*, 196 Va. 1007,

1013, 86 S. E. 2d 818; *Baggett Trans. Co.* v. *Commonwealth*, 195 Va. 359, 366, 367, 78 S. E. 2d 702; *Huffman Co.* v. *Unemploy. Comm.*, 184 Va. 727, 740, 36 S. E. 2d 641; *Cole* v. *Commonwealth*, 169 Va. 868, 880, 193 S. E. 517; *Hunton* v. *Commonwealth*, 166 Va. 229, 236, 183 S. E. 873.

For the purposes of this discussion, we will assume that the legislature intended the word "office" to mean "a place for the regular transaction of business." And we will agree that the word "office" must be interpreted in the light of the other language in the statute— "or other definite place of business in the State."

But it does not follow that we must adopt the petitioner's added definition of office as a place "where customers come and sales are made." To give the word "office" that meaning would add something to the statute which the legislature failed to add and would give the word a meaning it does not ordinarily have.

A place "where customers come and sales are made" is generally termed a "store" or "salesroom." The statute specifically withholds exemption from a commission merchant who has a store. So, quite obviously, the legislature intended the word "office" to mean something different from "store."

It must be remembered that the legislature, in enacting the exemption provisions here in dispute, was dealing with the business of selling merchandise on commission. The legislature surely knew that many of those engaged in that business travel from place to place to make sales and that if they have an office they would not necessarily make the same use thereof as someone engaged in a different type of business.

The logical conclusion to be drawn is that the legislature intended that a commission merchant should be deemed to have an office if he sets aside and equips some place where he performs functions necessary to the transaction of his business, making such regular use thereof as the nature of his work requires. This interpretation fits the word "office" into its definition as "a place for the regular transaction of business." And, to the extent that a commission merchant makes such use of an office, he may be said to have a "definite place of business in the State" within the contemplation of the language of Code, § 58-293.

The interpretation we have given to the statutory language, together with the evidence before us, refute the petitioner's contention that he is exempt from payment of the license taxes. Regularly each

week, as the nature of his work requires, he performs, in the room set aside and equipped for that purpose, functions which are necessary to the transaction of his business as a commission merchant. He has, therefore, an office within the meaning of Code, § 58-293.

 In resolving the issue before us, we find it unnecessary to decide whether the petitioner is estopped to deny that he has an office because of the statements made in his income tax returns. In his testimony in the trial court, he did not deny that he had an office, but admitted that he had one by referring to "the office." The closest stand he took toward denial was to say, after describing the nature of the arrangement in his home, "I don't know whether that would be an office or what."

Whether or not the information in the tax returns was conclusively binding upon the petitioner, it certainly was competent and persuasive evidence which, when considered together with the other evidence in the case, preponderated against the petitioner's claim that he "had no office" and caused him to fail to carry the burden of proof imposed upon him.

The order of the trial court will be reversed, and the petitioner's application dismissed.

*Reversed and dismissed.*