**KANSAS CITY, Missouri, a municipal corporation, Appellant,**

v.

**STANDARD HOME IMPROVEMENT CO., INC., Respondent.**

**No. KCD 26336.**

Missouri Court of Appeals,
Kansas City District.

Aug. 5, 1974.

Aaron A. Wilson, City Counselor, George L. DeBitetto, Associate City Counselor, Kansas City, for appellant.

James E. Campbell and James J. Melching, Kansas City, for respondent.

Before PRITCHARD, P. J., and WASSERSTROM and SOMERVILLE, JJ.

PRITCHARD, Presiding Judge.

The dispute is whether respondent, Standard Home Improvement Co., Inc., is liable for additional occupational license based upon an inclusion in its "gross an-

nual business" of amounts it received from Universal Home Remodeling Co., which amounts Standard had paid on behalf of Universal for supplies and labor expenses. Standard and Universal are owned, controlled and managed by the same shareholders, officers and directors. Each corporation filed separate federal and state income tax returns, and each paid separate personal property taxes in its own name. The two corporations are, however, distinct entities.

Standard was licensed as a building, contracting or construction company under § 21.86, Code of General Ordinances, 1966, of the City. It engaged in the repair and remodeling of residential and small commercial buildings, the same as Universal. Apparently Universal occupied the same building as does Standard, but on the second floor. There were two outside entrances numbered 1410 and 1414 Westport Road. With the exception of sales people, who were basically independent contractors, the persons employed by Universal are also on the payroll of Standard. Apparently Universal performed only the function of procuring sales for home and other improvements by telephone solicitation, and did not maintain construction and repair crews. These were supplied by Standard which maintained the payroll for the workmen on the jobs, and also paid material bills for lumber and so forth. Upon receipt by Universal of amounts for its sales, it would accumulate them and periodically it would pay them to Standard which deposited them in its bank. Universal reported all amounts received by it as gross annual business to the City and paid its occupational license based thereon.

The reason given by Standard's secretary and general manager, Mr. Melvin Gardner, why the two affiliated corporations were operating from the same premises, under the same ownership and control, and doing the same type of business was this: "A Basically the reason for the two companies is advertising and method of obtaining leads. Standard advertises on television, radio, television and newspapers and obtains their business leads this way, and recognizes that there was a vast market in the phone solicitation field; so Universal gets their leads from telephone solicitation and Standard gets theirs by advertising."

The City audited Standard's books and found that it had excluded from its computation of gross annual business for the years 1966 through 1970 the amounts paid it by Universal which had been paid by Standard for labor and materials in completing Universal's solicited contracts. That resulted in Standard being in a next higher license fee bracket under Ordinance No. 26967 (Code of Gen.Ord. § 21.86) for the years in question, and an additional amount of license tax for each year of $100.00 as claimed by the City. The trial court ruled that the amount claimed for 1966 was barred by the statute of limitations. The City abandoned its claims for penalties at trial. The trial court ruled the remaining Counts II, III, IV and V for Standard and against the City.

§ 21.36, Code of Gen.Ord. of the City defines "Gross Annual Business" which "shall be taken to mean twelve (12) times the average monthly value of all services performed, goods, wares, merchandise, chattels and all other personal property of every kind and description, bought, sold, loaned or exchanged in the business in question, during the period in which such business shall have been conducted, or for the period of one year next preceding the date upon which the required license becomes due, or if past due and demand is made therefor, then the date of such demand."

This type of ordinance has been much litigated, 9 McQuillan on Municipal Corporations, § 26.37, p. 90, and cases footnoted, and in this and other states the meaning of "gross annual business" has been set forth. Thus, in State v. Hallenberg-Wagner Motor Co., 341 Mo. 771, 108 S.W.2d 398 (1937), the issue was whether the sales tax was to be computed on the basis of actual

cash receipts or the basis, or on the total selling price of several articles involved in a chain of transactions derived from an original trade-in sale. The court held for the state on the latter proposition, and based its decision on the dictionary meaning of the term "gross receipts" as such in the statute: "Gross means: '4. Whole; entire; total; as, the gross sum, amount, weight;—opposed to net. The gross earnings, receipts, or the like, are the entire earnings, receipts or the like, under consideration, *without any deduction.*' Webster's New International Dictionary (2d Ed.) tit. 'Gross.' " [Italics added.] See also Kirkwood Drug Company v. City of Kirkwood, 387 S.W.2d 550, 555[6, 7] (Mo.1965), defining these terms, "that 'annual gross business' [the same as used in the ordinance, supra] means the whole and entire amount of the licensee's business without deduction, and that 'annual gross receipts' means the whole and entire amount of the licensee's receipts without deduction."; Laclede Gas Co. v. City of St. Louis, 363 Mo. 842, 253 S.W.2d 832, 835[2–4] (Mo. banc 1953), "The word 'gross' appearing in the term 'gross receipts,' as used in the ordinance, must have been and was there used as the direct antithesis of the word 'net.' In its usual and ordinary meaning 'gross receipts' of a business is the whole and entire amount of the receipts without deduction. 18 Words and Phrases, Perm.Ed., page 697."; 38 C.J.S. Gross p. 1083; Savage v. Commonwealth ex rel. State Corporation Commission, 186 Va. 1012, 45 S.E.2d 313, 317 (1947).

■ Standard's records, when audited by Mr. Latimer of the City did show that job costs reimbursements were among Standard's other receipts for the years in question. Standard argues: "Merely because the reimbursement figures were portrayed under receipts does not mean they (reimbursements) are gross receipts or gross business for purposes of occupation license tax applications. If this were so, then loans to defendant, also reflected as receipts on defendant's financial statements for the years in question, should also constitute gross receipts or gross business for purposes of occupation license tax application, likewise, proceeds from loans in connection with a debt consolidation transaction for the benefit of a customer." The argument is untenable because the advances were not treated as loans; they partake more of the nature of *sales* of labor and material at cost to Universal. They were done pursuant to the carrying out of the *business operations,* that of repair and remodeling of residential and small commercial buildings, of the two separate corporations, and obviously for the reason that Universal, the corporation closely affiliated with Standard, did not have the work force to carry out construction contracts. The receipts for the advances made by Standard must be treated as a part of its basic business operation, that is, a part of its annual gross business under the terms of the ordinance. As such, the receipts were properly includable in the computation of the license tax due, albeit that the work and materials were furnished at cost, and that computation is to be made "without deduction."

The case of Simmons Hardware Co. v. City of St. Louis, 192 S.W. 394 (Mo.1917), although involving actual sales of wares, is analogous. There the plaintiff had closely allied corporations in other states to which it sold wares from its St. Louis office at cost, as it did to Simmons Saddlery Company in St. Louis. Simmons Saddlery was a Missouri corporation having a common ownership of stock with plaintiff. Plaintiff sought to recover a portion of its license tax paid based upon sales to these affiliated corporations. As to the corporations in other states, the court said, loc. cit. 192 S.W. 397, "They were all distinct and separate entities, either of which might independently prosper, and survive the others. * * * It sufficiently appears, however, that all the elements of payment and delivery which characterize a sale were present in the transactions. Having voluntarily adopted that method of transacting business, it does not now lie in the mouth

of the respondent to say that it means something else than the character they have given it." The same reasoning was adopted as to the Simmons Saddlery Company transactions, and the judgment in favor of Simmons Hardware Co. was reversed. In the case of In re Bush Terminal Co., 93 F.2d 661 (C.A.2d 1938), Bush Terminal Company and its subsidiary, Bush Terminal Building Company, were debtors in reorganization proceedings. The City of New York filed a claim for utility and sales taxes based upon gross operating income. Apparently, the contention of the subsidiary debtor, appellant, was that the two corporations were to be treated as one and thus no tax was due. The Bush Terminal Building Company was owned by the Bush Terminal Company, with common officers and directors. The former company had a steam plant, built by the latter company on its land, and supplied steam to it at cost. The transaction was a sale and was so treated by both companies on their books. In affirming the order that the City's claims were allowable, the court said, 93 F.2d 663[1–3], "The debtor and the appellant are separate entities, and there is no occasion to apply the rule which allows the corporate fiction to be disregarded. It should be preserved here. (Citing cases.) The intercorporate relations of the two companies may have been arranged to gain certain advantages, but that will not avoid the tax in this case. See Douglas & Shanks, 'Insulation from Liability through Subsidiary Corporations,' 39 Yale Law Journal, 193. There is no legal obstacle against regarding the sale of this steam from a subsidiary to a parent company as a purchase and sale. * * *." Compare Anno. 64 A.L.R.2d 769; and Milwaukee Motor Transp. Co. v. Commissioner of Tax., 292 Minn. 66, 193 N.W.2d 605 (1971), where the propositions of taxability of separate corporations and double taxation is fully discussed, to the end that Standard's contentions must here be denied.

Standard claims that the statute of limitation, § 516.120, RSMo 1969, V.A.M.

S., bars the claim for the 1966 occupational license tax. That is true. According to the ordinance, the tax for that year was due March 1, 1966. The petition was filed December 28, 1971, more than five years after the cause of action arose.

The judgment is reversed and the case is remanded with directions to enter judgment for the City of Kansas City, Missouri, for the occupational license taxes due for the years 1967, 1968, 1969 and 1970.

All concur.