**KANSAS CITY, Missouri, a municipal corporation, Plaintiff-Appellant,**

v.

**C–J CONSTRUCTORS, INC., Defendant-Respondent.**

No. 30172.

Missouri Court of Appeals, Western District.

Sept. 4, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 1979.

Application to Transfer Denied Nov. 14, 1979.

Aaron A. Wilson, George L. DeBitetto, Kansas City, for plaintiff-appellant.

John H. Foard, Jr., Foard & Foard, Kansas City, for defendant-respondent.

Before HIGGINS, Special Judge, Presiding, SWOFFORD, C. J., and ROBERT R. WELBORN, Special Judge.

ANDREW J. HIGGINS, Special Judge.

Appeal from the judgment on verdict directed for defendant at close of the evidence in plaintiff's suit for occupation license tax deficiencies. The question is whether C–J Constructors, Inc., is liable for additional occupational taxes based upon inclusion in its "gross annual business" of amounts received from William C. Haas, a realtor, and other companies owned or controlled by him, which amounts C–J paid to subcontractors on behalf of the Haas entities for construction services, C–J and the Haas entities being under the same ownership and control. Reversed.

C–J Constructors, Inc., is a licensed contractor, with its place of business at 4215 Baltimore, Kansas City, Missouri. It was classified by the City as a building, contracting or construction company pursuant to its application for a grant of an Occupational License for the years 1968 through 1973.

Plaintiff's suit was for deficiencies and penalties as follows:

| Year | Principal Amount | Penalty |
|------|------------------|---------|
| 1968 [1] | $650.00 | $195.00 |
| 1969 | 525.00 | 131.25 |
| 1970 | 525.00 | 131.25 |
| 1971 | 625.00 | 156.25 |
| 1972 | 525.00 | 131.25 |
| 1973 | 440.00 | 110.00 |

Defendant's occupation license tax deficiencies were revealed through an audit of books and records made available by defendant to the City's auditor.

Section 21.86, Code of General Ordinances, 1966, relates to "Building, Contracting or Construction Company," and requires the license fee "be based upon the gross annual business done and performed by any such contractor within the corporate limits of the City during the period of twelve (12) months last past before the payment of the license."

Section 21.36 of the Code defines "gross annual business" as "twelve (12) times the average monthly value of all services performed, goods, wares, merchandise, chattels and all other personal property of every kind and description, bought, sold, loaned or exchanged in the business in question * * *."

C–J was organized by Mr. Haas, a real estate broker, manager, counselor, and appraiser, "for the purpose of constructing residential apartments." Its function was "to act as a general contractor and to provide supervisory and common labor help. * * * Everything else was subcontracted." Its services were performed for other Haas entities which, in turn, reimbursed C–J for the cost of all such services rendered to each such entity.

Lawrence G. Latimer, on behalf of the City, performed the audit of the foregoing payments to arrive at C–J's "gross annual business" for the years in question, and computed the additional license fees due for each such year. The amounts are not disputed. Mr. Latimer, when asked "what goods, wares, merchandise, chattels and other personal property bought, sold, loaned or exchanged to the business of the defendant" he found in his audit, stated, "C–J Constructors bought all of the goods and services necessary to construct these projects and they exchanged them with Mr. Haas at the final conclusion or completion of those projects." The services found performed by C–J were "everything necessary to the completion of an apartment project."

Respondent contends the judgment should be affirmed on the theory of the trial court that "Plaintiff had failed to provide any evidence of the value of defendant's services rendered and, consequently, has failed to prove an essential item of plaintiff's case, the gross annual business of defendant."

Appellant contends it had evidence to show the value of services rendered by defendant because the job cost reimbursements received by defendant from other Haas entities shown by defendant's books and records represented the value of services which constituted "gross annual business" within the purview of Section 21.36, supra.

The question thus posed and previously stated was answered in *Kansas City v. Standard Home Improvement Co., Inc.*, 512 S.W.2d 915 (Mo.App.1974). Standard Improvement Company and Universal Home Remodeling Company were separate entities owned, controlled, and managed by the same officers, directors and shareholders. Standard was licensed as a building, contracting or construction company under Section 21.86, and engaged in repair and remodeling of residential and commercial buildings as did Universal. Universal, however, functioned only in procurement of sales for home and other improvements

---

1. Plaintiff dismissed Count I for this deficiency on the bar of the Statute of Limitations.

through telephone solicitation. Universal had no construction and repair crews. These were supplied by Standard which maintained the payroll for workmen and paid material bills. Upon receipt by Universal of such accounts, Universal would accumulate them and periodically pay them to Standard. The City audited Standard and found it had excluded from its computations of "gross annual business" the amounts received from Universal which Standard paid to its subcontractors for labor and materials in completing Universal's solicited contracts. Standard contended, as does C–J, that the job cost reimbursements it received from Universal were not to be included in "gross annual business." The Court answered, apropos C–J's contention: "Standard's (C–J's) records, when audited by Mr. Latimer of the City did show that job costs reimbursements were among Standard (C–J's) other receipts for the years in question. * * * they partake * * * of the nature of sales of labor and material at cost to Universal (Haas). They were done pursuant to the carrying out of the business operations, that of repair and remodeling (construction) of residential and small commercial buildings (apartments), of the * * * separate corporations * *. The receipts for the advances made by Standard (C–J) must be treated as a part of its basic business operation, that is, a part of its annual gross business under the terms of the ordinance. As such, the receipts were properly includable in the computation of the license tax due, albeit that the work and materials were furnished at cost * * ". 512 S.W.2d 915, 917.

Similarly in *Simmons Hardware Co. v. City of St. Louis,* 192 S.W. 394 (Mo.1916), plaintiff had allied corporations in other states to which it sold wares from its St. Louis office as it did to Simmons Saddlery Company in St. Louis. Simmons Saddlery, a Missouri Corporation, had common ownership of stock with plaintiff. Plaintiff sought to recover a portion of its license tax based upon sales to its affiliated companies. As to the foreign corporations, the Court said, "They were all distinct and separate entities, either of which might independently prosper, and survive the others. * * *

It sufficiently appears, however, that all the elements of payment and delivery which characterize a sale were present in the transactions. Having voluntarily adopted that method of transacting business, it does not now lie in the mouth of the respondent to say that it means something else than the character they have given it." 192 S.W. 394, 397. The same reasoning was applied to the Simmons Saddlery Company transactions, and the judgment in favor of Simmons Hardward Co. was reversed. See also *In re Bush Terminal Co.,* 93 F.2d 661 (2nd Cir. 1938).

Respondent's assertion that its only activity was to serve as a supervising and disbursing agent is not persuasive as a distinction of the analogous cases cited and quoted.

Accordingly, the judgment is reversed; and with the amounts of license taxes undisputed the cause is remanded with directions to enter judgment for the City of Kansas City, for occupational license taxes due in the undisputed amounts together with the appropriate penalties for the years 1969, 1970, 1971, 1972, and 1973.

All concur.