## Richmond

NORTHERN VIRGINIA DOCTORS HOSPITAL CORPORATION v. DEPARTMENT OF TAXATION OF VIRGINIA, SALES AND USE TAX DIVISION.

DOCTORS HOSPITAL PHARMACY, INC. v. DEPARTMENT OF TAXATION OF VIRGINIA, SALES AND USE TAX DIVISION.

January 15, 1973.

Record Nos. 7956 and 7957.

Present, All the Justices.

*J. Strouse Campbell (Herrell, Campbell and Lawson,* on brief), for plaintiff in error in Record No. 7956.

*Jesse B. Wilson, III (McCandlish, Lillard & Marsh,* on brief), for plaintiff in error in Record No. 7957.

*Sally Trapnell Warthen, Assistant Attorney General (Andrew P. Miller, Attorney General; Lee F. Davis, Jr., Assistant Attorney General,* on brief), for defendant in error in Record Nos. 7956 and 7957.

HARRISON, J., delivered the opinion of the court.

Northern Virginia Doctors Hospital Corporation and Doctors Hospital Pharmacy, Inc., filed their petitions in the court below seeking to correct an erroneous assessment for sales taxes made by the

Virginia Department of Taxation, Sales and Use Tax Division, on the sale of drugs by the Pharmacy for use by patients in the Hospital. Hospital and Pharmacy appeal the final order of the lower court denying the relief sought.

The dispositive question is whether the drugs thus assessed are sales to the Hospital and thereby subject to a sales tax under Code § 58-441.4 or whether they are medicines and drugs "dispensed by or sold on prescriptions or work orders of licensed physicians," and thereby exempt from the sales tax by operation of Code § 58-441.6(s).

The Hospital is a profit-making corporation, duly accredited and licensed. It was organized in 1956 and has 164 rooms with 267 beds. There are 391 physicians on its staff and it has 510 employees, 120 full-time nurses and 44 part-time nurses. The Pharmacy is a corporation duly licensed as a pharmacy, and it leases premises from the Hospital in the lower level of one of its wings. There is no ownership connection between the Hospital and the Pharmacy. The lease agreement was entered into in 1963 prior to the enactment by Virginia of its sale and use tax law. Code §§ 58-441.1 *et seq*. All proceeds from sales made by the Pharmacy belong to the Pharmacy. The Hospital includes the Pharmacy's charges as a part of the total bill which it submits to its patients. At the end of each month the Hospital delivers to the Pharmacy the receipts attributable to sales by the Pharmacy to patients in the Hospital, after deducting the rent due under the lease. The Pharmacy makes some sales, other than under the regularly established procedure hereinafter mentioned, which are not included in the computation of rent. In event there is any dispute as to the amount of a patient's bill for drugs purchased from the Pharmacy, or any claim that because of necessitous circumstances of the patient a portion of the bill should be forgiven, resolution of the dispute or the discussion of the request for a reduction in the bill is carried on by the Pharmacy and the patient.

All physicians on Hospital's staff are licensed and all patients in the Hospital are their private patients. All drugs and medicines upon which the sales tax was assessed against the Hospital would normally be exempt drugs and medicines as provided under Code § 58-441.6(s).

The procedure followed in dispensing drugs in the Pharmacy to patients in the Hospital is reflected by the evidence. The initial step is a written order by a patient's doctor entered on a form known as a "doctor's order sheet" that a specific drug be administered to the patient. This order becomes a part of the patient's record. If the

doctor is in the hospital at the time this order is given the doctor writes the order on the form. He may also telephone such an order, in which event his order is transcribed by a nurse onto the form and later signed by the doctor when he comes to the hospital. In no event is a drug dispensed unless ordered by a doctor for one of his patients by means of an entry on the doctor's order sheet. The record shows that the greater portion of the drugs dispensed by the Pharmacy pursuant to the doctors' orders are obtained from the Pharmacy by means of a form known as a "pharmacy requisition".

When a doctor prescribes a certain drug for a patient he writes the order for the medicine on the doctor's order sheet and dates and signs it. A nurse then procures a pharmacy requisition form which is stamped with the patient's plate. This plate carries the name, number and room number of the patient and the name of the prescribing physician. The nurse writes on the form the medications called for by the doctor's order with the instructions the doctor has given as to their use. The requisition is hand-carried to the Pharmacy and the order is filled by a pharmacist. The drug or medicine is returned to the nursing station and administered to the patient as directed by the physician.

Various procedures are followed to insure the integrity of the drugs prescribed to be administered, and to insure that the correct drug is administered to the right patient. When a certain drug is discontinued or a patient is discharged a credit form is filled out at the nursing station setting forth the unused quantity of the drug in question. This form, with the unused drug, is delivered to the Pharmacy where the proper money credit to the patient is computed and entered on the form.

In addition to drugs that are prescribed, procured and administered as above outlined, the Hospital purchases certain other drugs, medicines, and materials from the Pharmacy upon which it pays the required sales tax. The Hospital is a profit-making corporation and if a non-profit hospital used the identical procedure of the Hospital herein the Virginia tax authorities would rule the drug distribution tax exempt under Code § 58-441.6 (t). However, we are not concerned with either the statutes or the regulations of the Tax Commissioner which exempt non-profit hospitals from the payment of certain sales taxes, and require the collection of sales taxes from profit-making hospitals. The narrow issue before us is whether or not the procedure followed in the instant case constitutes a sale of drugs on

a "prescription or work order" of a licensed physician. If so, the drug is tax exempt.

It is of no moment that in all probability the lease arrangement between the Hospital and the Pharmacy is a profitable arrangement for both. It can as well be argued that the operation of a pharmacy, within the physical plant of a hospital, and the arrangement by which unused medicines can be returned with proper credit to the patient is an advantage to the patient. Neither are we concerned here with the "integrity" of the prescription. The procedures followed by the Hospital and the Pharmacy are in compliance with state and federal law. Proper safeguards are used to insure that the doctors' orders for the procurement and administration of drugs are followed by the nurses involved and by the Pharmacy which compounds and sells the drugs pursuant to the requisitions, work orders or prescriptions.

Nor do we regard as important the manner in which the Pharmacy collects for the drugs it compounds and sells to specific patients in the Hospital. The drug bill due the Pharmacy by the patient is included along with other charges due by the patient incident to his or her stay in the Hospital. The Hospital collects all. Presumably the bills are paid by the patients, by their insurance companies or in some other manner. In some instances the bill is probably never paid and the Hospital thereby suffers a loss.

The Virginia Retail Sales and Use Tax Act, *supra*, became effective on March 12, 1966 for transactions taking place on or after September 1, 1966. Code § 58-441.4 of the Act imposes a tax on selling tangible personal property at retail. Code § 58-441.5 imposes a tax on the use of tangible personal property. Code § 58-441.6, entitled "Exclusions and Exemptions", provides that the terms "sale at retail" and "use" shall not include:

"(s) Medicines, drugs, crutches, braces, artificial eyes, contact lenses, eyeglasses, hearing aids, prosthetic devices and orthopedic appliances dispensed by or sold on prescriptions or work orders of licensed physicians, dentists, optometrists, ophthalmologists, opticians. . . ."

Appellants argue that the essential determination on the question of the applicability of the exemption is whether the drug, when it leaves the Pharmacy, is dispensed or sold pursuant to the order of a physician. If so they say that sale is exempt. They agree that if

the drugs are sold or dispensed by the Pharmacy to the Hospital for use and administration by the Hospital as the Hospital sees fit, then the sales are taxable.

The Attorney General contends that Code § 58-441.17 (a) clearly establishes the intent of the General Assembly that exemption from the Act be strictly construed against the taxpayer. He cites *Commonwealth* v. *Manzer*, 207 Va. 996, 1000, 154 S. E. 2d 185, 189 (1967) where this court held:

> "Since we are dealing here with a statutory exemption from taxation, the provisions setting forth that exemption must be strictly construed against the taxpayer, and any doubt as to whether the exemption applies must be resolved in favor of the Commonwealth. The burden is upon the taxpayer to show that he comes within the terms of the exemption. [Citing cases.]"

The Attorney General also cites Code § 58-441.41 which charges and empowers the State Tax Commissioner with the duty of making and publishing rules and regulations interpreting the Act, and § 1-65 of the 1966 Virginia Retail Sales and Use Tax Rules and Regulations which provides "an entry on a patient's medical record card or hospital chart of medicines or drugs for such patient does not meet the requirements of a written prescription".

We think the General Assembly, in enacting § 58-441.6 (s), intended to exempt drugs and medicines that are prescribed by a physician to be administered to a patient and which are prepared and compounded by a pharmacist from a written prescription or order.

In the instant case the drugs and medicines involved are "prescribed" by physicians for specific patients. A doctor prescribes and orders the drugs which are to be administered to a patient. His order is reduced to writing on a form designated "doctor's order sheet". His prescription or order for the medicine, showing the dosage to be given the patient, is signed and dated by the physician. A nurse copies the doctor's prescription or order for drugs and medicines from the doctor's order sheet on a pharmacy requisition form. The form carries a clear identification of the patient, the doctor's name, a description of the drug, the dosage to be administered, and is signed by the nurse. This requisition form is delivered to the Pharmacy and it is from the information on the form (copied and transmitted from the doctor's order sheet) that the pharmacist com-

pounds and prepares the drug or medicine. That is, he fills the prescription.

Code § 54-524.2 (b) (28) defines "prescription" as follows:

"*'Prescription'* shall mean and include an order for drugs or medical supplies, written or signed or transmitted by word of mouth, telephone, telegraph or other means of communication to a pharmacist by a duly licensed physician, dentist, veterinarian or other practitioner, authorized by law to prescribe and administer such drugs or medical supplies."

The above definition of prescription is found in "The Drug Control Act", Code §§ 54-524.1 *et seq.* We find no definition of prescription in the Virginia Retail Sales and Use Tax Act, *supra.*

In *Webster's Third New International Dictionary* "prescription" is defined as "a written direction for the preparation, compounding and administration of a medicine", and a "prescription drug" is there defined as "a drug that can be bought only as prescribed by a physician".

So defined, there can be little uncertainty that "prescription" includes the procedure outlined above. Any doubts as to whether or not such a procedure constitutes a "prescription" the General Assembly resolved when it included in Code § 58-441.6 (s) the words "or work orders". Here the physician's order for a drug by description and dosage, entered on the doctor's order sheet and dated and signed by him, is in fact a "work order"—a prescription for drugs—which is intended to be and is communicated to the pharmacist by means of a requisition. It is the sale on prescription or work order of a physician that is exempt. The order of the physician, whether it takes the form of a prescription or a work order, is the salient feature of the transaction, for without it the pharmacist takes no action.

It is our conclusion that a dispensation of drugs and medicines to patients in the Northern Virginia Doctors Hospital under the procedure outlined constitutes a sale on prescription or work order of a physician, and is exempt from taxation by Code § 58-441.6 (s). Accordingly the judgment of the lower court is reversed and the cases are remanded to the court below for the entry of such orders as may be indicated consistent with the views expressed herein.

*Reversed and remanded.*