## CIRCUIT COURT OF THE CITY OF RICHMOND

Bio-Medical Applications
of Roanoke, Inc.

v.

Virginia Department of Taxation

June 3, 1988

Case No. LL-213-4

By JUDGE RANDALL G. JOHNSON

Bio-Medical Applications of Roanoke, Inc. ("BMA") instituted this action seeking to have the court correct what it contends is an erroneous assessment of sales and use taxes for purchases of certain items by BMA during the period October 1, 1977, to November 1, 1983. The total amount of such taxes and interest for the subject period is $106,613.08, of which BMA contests $71,230.56. The entire assessment has been paid, BMA seeking by this action to obtain a refund of the contested amount. At issue is whether certain items purchased by BMA are exempt from sales and use taxes under what was then § 58-441.6 of the Code of Virginia. The parties have stipulated all relevant and material facts, and have each filed a motion for summary judgment. The court agrees that there exists no genuine issue of any material fact and that summary judgment is appropriate.

1. *Facts*

BMA is a private, for-profit corporation which is engaged in the business of providing out-patient hemodialysis treatment to patients suffering from end-stage renal

disease.[1] Patients are referred to BMA by private physicians who are not on BMA's staff. At the time of referral, a member of BMA's nursing staff takes the prescription for treatment of the patient from the referring physician, usually by telephone. The information received is recorded on a "Hemodialysis Orders" sheet for each patient. Later, the physician initials or signs the sheet. Such information includes, among other things, the number of hours of each dialysis treatment and the number of treatments per week; the type of equipment to be used;[2] and the types and amounts of medication to be given.[3] Only patients who are referred to BMA by a physician, and for whom there is a Hemodialysis Orders sheet, are serviced by BMA. No "off-the-street" business is allowed.

BMA makes the majority of its purchases of equipment and drugs from a drug wholesaler and manufacturer of dialysis equipment, drugs, and supplies located in New Jersey. Such purchases are made once a month in accordance with a "reorder formula" designed to insure that sufficient supplies (equipment and medication) are on hand to provide hemodialysis treatment to current patients for one and one-half months. Such formula relies on usage records, the Hemodialysis Orders and changes thereto, and a "reorder factor." The reorder factor is the number of treatment days (Monday through Saturday) in a month divided by the number of treatment days in the previous month, plus .5. The result of the reorder formula is that BMA will ordinarily order at the beginning of the month enough supplies to be able to service its patients for one month and thirteen dialysis treatment days. If BMA acquires a new patient, it will, to the extent possible, service that

---

[1] End-stage renal disease is a permanent and incurable disease of the kidneys, the only treatment for which is a transplant or dialysis.

[2] Dialysis equipment includes dialyzers, blood tubing, dialysis machines, and fistula needles. Except for the machine itself, these items come in different types and sizes, and the physician prescribes the specific equipment to be used for each patient.

[3] As with the equipment, the types and amounts of medication will vary, and the physician prescribes the specific medication and dosages for each patient.

patient out of its existing stock or, if necessary, will make a special purchase from a local pharmacy or another clinic, and will then increase its order of the appropriate supplies for the following month. If a patient is lost through death or otherwise, a smaller quantity of supplies used by that patient will be ordered for the following month. The account of a lost patient receives no credit for any supplies ordered and received by BMA under its ordering procedure and not actually used by such patient. Once received, the purchases are stored in various places within BMA's treatment center, including a locked medicine cabinet for certain of the drugs. In anticipation of the arrival of a patient for treatment, the necessary products are removed from storage and prepared for use in accordance with that patient's Hemodialysis Orders sheet. After first use, the patient's name and date of use(s) is recorded on the dialyzer label. Otherwise, no patient's name appears on the products except in the case of some drugs purchased from local pharmacies (*e.g.*, where a drug's shelf life is short and the minimum quantity available from the wholesaler is larger than the amount BMA's patients would use during the drug's shelf life). Even in these cases, however, patients' names are not always placed on the labels; that is, some purchases are made in BMA's name only.

BMA bills and collects from Medicare. Laboratory and pharmacy charges are stated separately, and the items making up the charge are specifically listed. Charges are made based on actual use and at the rate allowed by Medicare. No charges are made directly to patients, and patients receive no billing statement from BMA.

## 2. *Applicable Statutes*

At the time of the purchases involved in this action, Va. Code § 58-441.6 set forth the exclusions and exemptions to the requirement of paying sales and use taxes. Prior to July 1, 1978, § 58-441.6(s) exempted:

> (s) Medicines, drugs, crutches, braces, artificial eyes, contact lenses, eyeglasses, hearing aids, prosthetic devices and orthopedic appliances dispensed by or sold on prescriptions or work orders of licensed physicians, dentists,

optometrists, ophthalmologists, opticians, and controlled drugs purchased by a licensed physician for use in his professional practice.

Effective July 1, 1978, the above subsection was amended to include as exempt hypodermic syringes and wheelchairs.[4]

Effective July 1, 1979, the above section was again amended by deleting therefrom references to crutches, wheelchairs, braces, prosthetic devices, and orthopedic appliance, and a new subsection (s1) was added, which declared exempt:

(s1) Wheelchairs and parts therefor, braces, crutches, prosthetic devices, orthopedic appliances, catheters and urinary accessories when purchased by an individual for use by such individual.

In 1980, subsection (s1) was amended to include as exempt insulin and insulin syringes, and to provide that purchases of any item in that subsection were exempt if made "by *or on behalf of* an individual for use by such individual." Emphasis added. Finally, in 1984, after the period of the subject purchases, a new subsection (s2) was added, which exempted:

(s2) Drugs and supplies used in hemodialysis and peritoneal dialysis.[5]

[4] The list of items purchased by BMA during the period in question is quite extensive and will not be set out here. The parties and the court agree, however, that all such items can generally be classified as "medicines and drugs," "hypodermic syringes," or "prosthetic devices." Moreover, BMA concedes that prior to July 1, 1978, hypodermic syringes were not among the items listed as exempt under Section 58-441.6(s), and that prior to July 1, 1979, it had no work orders or prescriptions containing hypodermic syringes. Accordingly, BMA does not contest the taxes assessed on such items prior to July 1, 1979.

[5] There were also amendments to subsection (s1) between 1980 and 1984, but such amendments are not relevant here.

Thus, with regard to the three categories of items purchased by BMA from October 1, 1977, to November 1, 1983, such purchase of medicines and drugs are exempt from tax for the entire period if they were "dispensed by or sold on prescriptions or work orders of licensed physicians. . . ." Hypodermic syringes are exempt if they meet the same test beginning July 1, 1979.

With regard to purchases of prosthetic devices, they are exempt for the period October 1, 1977, to June 30, 1979, if they meet the same test as for medicines and drugs, and hypodermic syringes. For the period July 1, 1979, to June 30, 1980, they are exempt if they were purchased "by an individual for use by such individual." Those same devices are exempt for the period July 1, 1980, to November 1, 1983, if they were purchased "by or on behalf of an individual for use by such individual." With the above facts and statutory provisions in mind, the positions of the parties must next be considered.

## 3. *BMA's Position*

BMA contends that § 58-441.6(s), which applied to medicines and drugs for the entire period in question, which applied to hypodermic syringes on and after July 1, 1978,[6] and which applied to prosthetic devices prior to July 1, 1979, exempts its purchases of those items from sales and use taxes. Specifically, BMA argues that since it prepares its work orders for those items on the basis of its patients' use of the items during the previous month, that each patient's use of any item must be pursuant to a Hemodialysis Orders sheet, and that each Hemodialysis Orders sheet is prepared from a prescription of a licensed physician, such items are "dispensed by or sold on prescriptions or work orders of licensed physicians."

With regard to prosthetic devices on and after July 1, 1979, BMA argues that such devices were purchased "on behalf of" the individual patients at its clinic. Further, BMA argues that even though the "on behalf of" language was not added until 1980, the court should find that the

---

[6] But see n. 4 supra.

General Assembly was merely clarifying what it meant in 1979.

Finally, BMA argues that the 1984 amendment, which exempts all "[d]rugs and supplies used in hemodialysis and peritoneal dialysis," without regard to whether such items are dispensed or sold on a prescription or work order of a physician, and without regard to whether such items are purchased by · or on behalf. of an individual, was a further attempt by the General Assembly to clarify, rather than to change, existing law. In sum, BMA contends that the above factors require the Department of Taxation to refund the entire $71,230.56 in taxes and interest which BMA contests.

### 4. *Department of Taxation's Position*

The Department of Taxation concedes that the 1984 amendment to § 58-441.6 renders exempt from sales and use taxes the precise types of purchases made by BMA during the subject period. The Department argues, however, that such amendment, as well as the 1980 amendment adding the "on behalf of" language, constitute a change in, and not a clarification of, existing law. The Department further argues that BMA's purchases during the subject period were not of items "dispensed by or sold on prescriptions or work orders of licensed physicians," but were instead purchases of items dispensed by or sold on work orders of BMA. Finally, the Department argues that BMA's purchases of prosthetic devices were made not on behalf of its patients, but on its own behalf in servicing its patients. The Department believes its assessment is correct and that BMA is not entitled to the relief sought.

### 5. *Discussion*

The parties agree that this case is controlled by *Northern Virginia Doctors Hospital Corporation v. Department of Taxation*, 213 Va. 504, 193 S.E.2d 684 (1973), and *Commonwealth of Virginia v. Bluefield Sanitarium, Inc.*, 216 Va. 686, 222 S.E.2d 526 (1976). In *Doctors Hospital*, a pharmacy leased premises from a hospital in the lower level of one of the hospital's wings. There was no ownership connection between the hospital and the pharmacy, and

all proceeds from sales made by the pharmacy belonged to the pharmacy. In order for a drug in the pharmacy to be dispensed to a patient in the hospital, a "doctor's order sheet" had to be filled out. This could either be done by the doctor if he was at the hospital, or by a nurse on telephonic instructions from a doctor, in which event the form would be signed by the doctor later. In no event was a drug dispensed unless ordered by a doctor for one of his or her patients by means of an entry on the doctor's order sheet. After a doctor's order sheet had been filled out, a nurse completed a "pharmacy requisition" which contained the name, number, and room number of the patient, and the name of the prescribing physician. The form also contained the medications called for by the doctor's order with the doctor's instructions as to their use. The requisition was then hand-carried to the pharmacy and the order was filled by a pharmacist. When a patient's use of a certain drug was discontinued, or when a patient was discharged, a credit form was filled out at the nursing station setting forth the unused quantity of the drug in question. That form, along with the unused drug, was then delivered to the pharmacy, and a money credit would eventually be entered on the patient's hospital bill. Holding that the procedure followed by the hospital and pharmacy constituted a sale of drugs on a "prescription or work order" of a licensed physician, the Supreme Court ruled that the questioned transactions were exempt from taxation under § 58-441.6(s).

In *Bluefield Sanitarium*, a hospital maintained on its premises a pharmacy under the supervision of a licensed pharmacist who was an employee of the hospital. The pharmacy was not a separate entity, but was a part of the hospital. A drug committee composed of three staff doctors and the staff pharmacist determined what stock of drugs should be acquired by the hospital, and the hospital purchased those drugs in bulk quantities from drug manufacturers or wholesalers. Once received, the drugs were maintained under the supervision and control of the pharmacist until needed. When a physician determined that a hospital patient was in need of medication, he or she executed a work order or prescription and delivered it to the pharmacy. The pharmacist then prepared the prescription and the drug was taken to the patient for use. The charge for the drug

was added to the patient's bill and invoiced to the patient by the hospital. The Court held that this procedure did *not* constitute grounds for an exemption from taxation of the hospital's purchase of the drugs, and reversed the circuit court's holding to the contrary.

The court believes that the foregoing cases are dispositive of the issues here. Specifically, the court concludes that the procedures followed by BMA in purchasing equipment and medicines for use by its patients are, for all practical purposes, analogous to the procedures used by the hospital in *Bluefield*, and are vastly different from the procedures used in *Doctors Hospital*. First, BMA, like Bluefield Sanitarium, purchases supplies in bulk based on its determination of future need. Doctors Hospital obtained only what was specifically prescribed for a particular patient at a particular time. Second, both BMA and Bluefield take possession of and store the purchased supplies without identifying particular supplies by patient. Doctors Hospital took possession of supplies only long enough to deliver and administer them to its patients. Third, both BMA and Bluefield are the actual purchasers of the supplies from the wholesalers. In *Doctors Hospital*, it was an independent pharmacy which made such purchases.[7] Finally, while both BMA and Bluefield Sanitarium base their bulk purchases on prior actual use, they do so with full knowledge of the likelihood that portions of the purchased supplies will not be used by the same patients who used them previously, and whose use was a basis for the subsequent purchase. This occurs, for example, when a patient dies, changes clinics or hospitals, or, in the case of BMA, undergoes a kidney transplant. By contrast, Doctors Hospital obtains only what is reasonably and foreseeably needed by a specific patient right now, and patients are even given credits for supplies ordered and not used. All of these factors convince this court that the purchases at issue here are not exempt from sales and use tax.

---

[7] The tax being challenged in the Doctors Hospital case was NOT the tax imposed on the pharmacy when it made its purchases from wholesalers. Instead, it was the tax imposed on the hospital when it obtained drugs from the pharmacy.

In addition to the above factors, the Court in *Blue-field Sanitarium* set forth several principles which make the Department's position in this case even stronger. First, the Court explained that the exemption provided in Section 58-441.6(s) applies at the level where a retail sale is made to a patient or customer. Here, as in *Bluefield*, the tax was assessed on the purchase of bulk supplies from wholesalers and manufacturers.

Second, the questioned purchases in this case were not by a retailer, such as a pharmacy. Rather, they were made by an entity engaged in the "service business." To paraphrase *Bluefield*, irrespective of whether BMA is providing dialysis machines, beds, medicines, or other supplies, it is the "consumer" in the tax sense because all property acquired by it is for use in the performance of its service to patients. As the Court recognized, Section 58-441.6(s) "is designed to relieve *patients* of a tax, not to relieve persons 'engaged in essentially service businesses'." 216 Va. at 690 (emphasis in original).

Finally, the Court in *Bluefield* reaffirmed the principle that a tax assessment made by the proper authorities is prima facie correct and valid and that the burden is on the taxpayer to prove otherwise. Moreover, the Court also noted that the construction of a statute by a state official charged with its administration is entitled to great weight, and that its decision in *Bluefield* "accords with the construction of the applicable tax statutes made by the State Tax Commissioner." 216 Va. at 689. The same is true of the decision made here.

With regard to the remaining arguments of BMA, it will suffice to say that this court does not believe that the amendments to § 58-441.6(s), including the addition of the "or on behalf of" language in subsection (s1) and the subsequent exemption of all drugs and supplies used in dialysis, must be a clarification of prior law. Indeed, just as hypodermic needles and wheelchairs were added to the exempt items in 1978, and just as prosthetic devices and other items were placed in a different category from medicines and drugs in 1979, it is just as likely that the General Assembly was simply changing and adding to the list of items which it had previously intended to exempt. In the absence of clearer legislative history

than has been provided here, BMA's position in this regard cannot be accepted.

Finally, while *Doctors Hospital* and *Bluefield* were decided prior to the addition of the language of Section 58-441.6(s1) exempting purchases of certain items, including prosthetic devices, made by or on behalf of an individual for use by such individual, the holdings of those cases are equally applicable to that language. Simply put, the purchases of prosthetic devices by BMA were not on behalf of individuals, but on behalf of BMA for its use in servicing individuals. Accordingly, those purchases, even after 1980, are also not exempt.

For all of the foregoing reasons, the application of BMA for correction of erroneous assessment must be denied.